# Ivins's Appeal.

1. Technical words appropriately used in a will must receive their technical signification, unless a contrary intent be apparent, from a reading of the will.

2. A testator gave and devised his residuary estate, consisting of personalty and realty to trustees, in trust for his daughters, for life, with a power of testamentary appointment in the daughters; and in default of appointment, to the children or issue of such daughters; and "in default of such will, and child or children, or issue of such, then the principal to go to the heirs and next of kin of the daughters so dying, as provided by the Intestate law of Pennsylvania."   Upon the death of a daughter, intestate and without issue:

  *Held*, that, there being no apparent intent to the contrary, the words "heirs and next of kin" must receive their technical meaning; that the brothers and sisters of the said deceased daughter were as such heirs and next of kin, entitled to her share of realty and personalty so limited in trust, to the exclusion of her surviving husband, who was neither her "heir," nor "next of kin," within the technical sense of said limitation.

March 31, 1884.   Before MERCUR, C. J., GORDON, TRUN-
KEY, GREEN and CLARK, JJ.   PAXSON and STERRETT, JJ.,
absent.

APPEAL from the Orphans' Court of *Philadelphia County* :
Of January Term, 1884, No. 100.

This was an appeal by William H. Ivins from a decree of
said court, in the matter of the distribution of the balance
appearing due by the account of the Fidelity Insurance, Trust
and Safe Deposit Company trustees under the will of Charles
Abbey, deceased. Said balance consisted partly of personal
estate received by said trustees from the executors of said
decedents, appraised at about $74,000, and partly of rents of
real estate collected by the trustees.

Before the auditing judge (PENROSE, J.,) the following facts
appeared : Charles Abbey, by his will, dated February 14,
1878, gave and devised the residue of his estate to his three
daughters, Catharine G. Abbey, Martha O. Abbey, and Har-
riet Abbey, in equal parts. By a codicil to his will, dated
June 28, 1879, the testator gave pecuniary legacies to each of
his said daughters, and as to the residue of his estate, provided
as follows :—

" *Third.*—I direct the residue of my Estate given and
devised to my said daughters, Catharine, Martha and Harriet,
to be given to and be vested in ' The Fidelity Insurance,
Trust and Safe Deposit Company ' absolutely and in fee sim-
ple ; in Trust to keep the Real Estate in repair and rented,
and the Personal Estate securely invested, and to pay the net
income derived therefrom semi-annually in equal parts to my
said daughters for their sole and separate use respectively ;
and to hold each of the one-third parts of the Principal of
this Trust for the uses and purposes declared in the last Will
of each of my said Daughters respectively, and in default of
such Will for the use and benefit of the child or children of
each of my said daughters respectively, and the issue of any
child or children then deceased who shall take their parents'
share ; and in default of such will and child and children or
issue of such, then the Principal to go to the Heirs and next
of kin of the daughters so dying as provided by the intestate
law of Pennsylvania."

The testator's will and codicil was proved January 4, 1882.

Catharine G. Abbey, one of the testator's daughters, inter-
married, in April, 1883, with William H. Ivins, and died,
intestate and without children or issue, May 7, 1883 ; letters
of administration upon her estate were granted to her surviv-
ing husband the said William H. Ivins.

Before the auditing judge, Mr. Ivins claimed to be entitled
as surviving husband of said Catharine, deceased, to the share
10 OUTERBRIDGE.—12.

of principal held in trust for her during her life and after her death as limited and provided in the will of said testator. The same was also claimed by William R. Abbey, Charles O. Abbey, George P. Abbey, Martha O. Abbey and Harriet Abbey, the surviving brothers and sisters, as heirs and next of kin under the Intestate law of Pennsylvania of the said Catharine G. Ivins, *née* Abbey, deceased, as provided in the will of said testator.

The auditing judge awarded the said balance of principal of personal estate, being the share of said Catharine to her surviving husband, William H. Ivins, in the following adjudication:—

"Mrs. Ivins having died intestate and without children or issue, the question now presented is, to whom under the terms of the will, does the share of the estate held in trust for her pass.

"It must, perhaps, be conceded, though it was not so declared in express terms by the will, that her interest was a life estate only while she lived; her estate was an equitable · one; at her death the estate given was legal, and the two interests could not therefore coalesce: See Craige's Estate, 6 W. N., 318. Had the limitation in the event of the death of a daughter intestate and without issue been simply to her next of kin, as provided by the intestate law, it is well settled that a husband would not be included: Garrick *v.* Lord Camden, 14 Vesey, 372; Storer *v.* Wheatley, 1 Barr., 506. But here the additional word "heirs" is used, and it is equally well settled that in such case, where there is a gift of personal property, the term "heir" shall mean not personal representative, but those who, for the purpose of succession, stand in regard to the personal property of the testator in a position analogous to that in which the heir-at-law would stand in regard to his real property, in other words, as the equivalent of such persons as would have been entitled under the statutes of distribution to succeed to the personal property of the deceased in case of intestacy. *In Re* Porter's Trust, 4 K. & J., 197. It is true that in England, where a husband takes the estate of his wife not under the statutes of distribution, but by virtue of his paramount right as husband, he is excluded from a gift of personal estate to her heirs: Doody *v.* Higgins, 2 K. & J., 729. But in Pennsylvania a husband takes under the statute, and hence a gift to the heirs of the wife includes him: Eby's Appeal, 3 Norris, 241. The same rule applies to a mixed fund: De Beauvoir *v.* De Beauvoir, 3 H. L. C., 524; Boydell *v.* Golightly, 14 Sim., 327. See also Potter's Estate, 13 Phil. R., 318; Patterson *v.* Hawthorn, 12 S. & R., 112; Gibbons *v.* Fairlamb, 2 Casey, 217.

" The auditing judge is therefore of opinion, though not without considerable hesitation, that William H. Ivins is entitled, as husband, to the principal (using the word in the sense that the testator has done) of the estate held in trust for his wife, viz., the personal estate absolutely and the real estate for life. It is therefore awarded to him accordingly. . . . . . The balance of income shown by the account as the share of Mrs. Ivins, which had accrued up to the time of her death, the amount, $266.02, is awarded to her administrator, William H. Ivins."

The above named brothers and sisters of Catharine G. Ivins, deceased, filed exceptions to the foregoing adjudication, which the court, after argument, sustained, in the following opinion by PENROSE, J. :—

" The cases which hold that the word ' heirs ' in a testamentary gift of personal estate, may be understood as the equivalent of ' such persons as would have been entitled under the statutes of distribution to the personal estate in case of intestacy,' are the result of the rule of construction which forbids the rejection of a term, if, taking it in its popular and not its technical sense, a meaning can be given to it. But it is a maxim of the law that an heir will not be disinherited unless by express words or by necessary intendment ; and that all doubts of construction are to be resolved in his favor : Brendlinger v. Brendlinger, 2 Casey, 132; France's Appeal, 25 P. F. S., 220. Hence it is always to be presumed that the word heirs, when used in a will, is intended in its technical sense ; and this presumption will stand unless a contrary intent be clearly shown to appear from the context, or unless the subject of the gift be one to which, in its technical sense, it is inapplicable : Porter's Appeal, 9 Wright, 201 ; Reifsnyder v. Hunter, 7 Harris, 41.

" In the present case both real and personal estate are embraced in the gift, and by applying it to the former, the word ' heirs ' may be satisfied without any perversion of its proper, technical import.

" That a husband is not in any sense the heir of his wife's real estate, is clear. He takes, in case of her intestacy, not under the intestate law, but, by the express recognition of the Act, as tenant by the curtesy at common law : Commonwealth v. Naile, 7 Norris, 434; Hitner v. Ege, 11 Harris, 305, differing in this respect from a wife who no longer has dower, but an interest under the intestate law (Cote's Appeal, 29 Smith, 235), and thus may with propriety be considered an heir : See Potter's Estate, 13 Phila., 318.

" Had the limitation been simply to the ' heirs ' of the first taker, the gift being a blended one of real and personal estate,

the heirs, understood in the proper sense of the word, would have taken both species of estate: Gwynne *v.* Muddock, 14 Vesey, 487; Clarke *v.* Cordis, 4 Allen, 480; Hawkins on Wills, 92 (note); but the testator has used also, the words 'next of kin as provided by the intestate law.' It is not to be supposed that these words were used redundantly or simply as a repetition of what was intended by the word heirs. The rule is that where a testator uses an additional word or phrase he is presumed to have had an additional meaning; and such meaning is given here by making the words apply, as they were manifestly intended to do, to the gift of personal estate. The construction will then be (as was said in Gwynne *v.* Muddock, *supra*), '*reddendo singula singulis*, that the next of kin shall take the personal estate and the heir at law the real estate;' and in both cases alike the husband is excluded: Garrick *v.* Lord Camden, 14 Vesey, 372; Storer *v.* Wheatley, 1 Barr, 506.

"The error of the auditing judge was in applying the abnormal use of the word heirs, permitted in a gift exclusively of personal estate, to the case of a blended gift of real and personal estate, when the term could be satisfied in its proper and technical sense: 2 Jarman, 22–23.

"The exceptions are sustained, and the adjudication corrected accordingly."

William H. Ivins thereupon took this appeal, assigning for error the decree of the court, sustaining the exceptions of the said William R. Abbey to the adjudication.

*William G. Foulke* and *Crawford & Dallas*, for the appellant.—The maxim that doubts of construction are to be resolved in favor of the heir, does not apply to this case. The contention here is not between strangers and the heir-at-law, or even the lineal descendants of Catharine, but is between her husband upon the one side, and collaterals merely upon the other. The husband's right has ever been held to be paramount to that of the heir. His "affinity is a nearer kindred than blood:" Lewis, C. J., Gibbon's Ex'r *v.* Fairlamb, 2 Cas., 219. The rule of construction which is applicable to a case such as this is that, where there is an antecedent gift, the law will adopt that construction which will devolve the succession upon those whom the law itself has, in its provisions for distribution in cases of intestacy, regarded with the highest favor. The law is astute to find, and courts to attribute to the testator, an intent to favor those who are the favorites of the law. Another canon of construction, which should be borne in mind in this case, is that the first taker in a will is presumed in law to be the favorite of the testator:

McFarland's Appeal, 1 Wright, 300; Rewalt v. Ulrich, 11 Harris, 388; and in such cases the gift is to be construed so as to make it as effectual to her as possible: Wilson, &c., v. McKeehan, 3 P. F. S., 79.

The provision expressed in the codicil was intended as a limitation of the trust estate to those entitled to take in succession under the intestate law, "as if vested in the deceased child" of the testator. It was not intended to be a limitation to such daughter's, "heirs and next of kin," in any strict technical sense, but those words were used by the testator as indicative merely of the quantity of interest which he meant to give to her, viz: To her for life, and upon her death, to those who, under the law, would be entitled to succeed her. The case is the same as if the clause had been written thus: "I give to my daughter for life, and, after her death, to those who would be entitled to take as her successors under the law; but subject to the condition that if she shall leave a child or issue of such child, it or they shall take after her death." Surely, under a clause so worded, mere collaterals would not be permitted to prevail against the claim of a husband, entitled under the law, and yet, by the change indicated, the sense of the clause as actually written has not been altered: Womrath v. McCormick, 1 P. F. S., 504; Crawford v. Ford, 7 W. N. C., 532; McBride v. Smith, 4 P. F. S., 248; Patterson Ex'r v. Hawthorn's Adm'r., 12 S. & R. 112; King v. King, 1 W. & S., 205: Reed v. Buckley, 5 W. & S. 519; Buckley v. Reed, 3 Har. 83; Gibbons's Ex'r v. Fairlamb, 2 Cas., 217; McGill's Appeal, 11 P. F. S., 46; Eby's Appeal, 3 Nor., 241; Potter's Estate, 13 Phila. Rep., 318. The court below, in founding its decision solely upon a technical construction and application of the words "heirs and next of kin," failed to recognize the importance and bearing of other words of the clause in question. That clause directs "the principle to go. . . . . . as provided by the intestate law of Pennsylvania." "The principle *to go*" points to succession, rather than to direct gift. The words "to go" are equivalent to the word descend, which indicates succession: Gibbons's Ex'r. v. Fairlamb, 2 Cas., 219; Haldeman v. Haldeman, 4 Wr., 35. The words "as provided by the intestate law of Pennsylvania," define and control the preceding words, "heirs and next of kin." We submit that the apparent intent of the testator as to his daughter was as if he had said to her: "Make a will if you choose. If you do not, and shall have no child, then accept that which the law makes for you."

If the foregoing views are correct, it follows that the appellant, as surviving husband of the testator's daughter Catharine who died intestate and without having had a child, is the per-

son now entitled to the personalty and to the rents in question, and the decree below must be reversed.

*George Junkin*, for the appellees.—Throughout this will and codicil the distinction between realty and personalty is closely observed, and appropriate technical language is used with respect to each. Reading it accordingly effect is given to the whole, and all difficulty vanishes : the realty goes to heirs, the personalty to next of kin, of a daughter dying intestate, without children or issue ; they take not by succession, through such daughter, but directly from the testator, the terms being *designatio personæ*: Gibbons *v.* Fairlamb, 2 Cas., 217 ; Eby's Appeal, 14 Wr., 311. A husband is in no sense a statutory heir of his wife's real estate, nor is he included within the designation " next of kin." Storer *v.* Wheatley's Exr., 1 Barr., 506 ; Commonwealth *v.* Naile, 7 Nor., 434 ; Hitner *v.* Ege, 11 Har., 305.

Mr. Justice GREEN delivered the opinion of the court, April 28, 1884.

We are of opinion that the learned court below has pronounced the true construction of the testator's will, in the final decree. The subject of the testamentary provision was an aggregate of personal and real estate. The objects of the testator's bounty were his *heirs* and *next of kin*. By the will he had given all the residue of his estate to his three daughters absolutely and in fee simple. By the codicil he made a radical change, and gave the residue to a trustee, in trust to keep the real estate in repair and rented, and the personal estate securely invested, and to pay the net income of the whole to the daughters, and to hold the principal in one third parts in trust for the uses and purposes declared by the last wills of his daughters respectively, and in default of wills, for the use of child or children of the daughters ; " in default of such will, and child and children or issue of such, then the principal to go to the heirs and next of kin of the daughters so dying, as provided by the intestate law of Pennsylvania." In this provision there are apt words which define with technical precision each of two classes of beneficiaries, to wit, *heirs* and *next of kin*. It has been so often held that when technical words are used in a will or other instrument they must have their technical meaning, unless a contrary intent appear, that it would be a mere affectation of learning to cite the authorities. On the question of intent, in this case, the will and codicil abound with evidence that the intention of the testator corresponded precisely with the strict legal meaning of the words used. The distinction between real and per-

sonal estate is constantly preserved, both in the words which refer to them descriptively, and in those which relate to their disposition. Thus, the residue being composed of personalty and realty, he *gives* and *devises* it, *absolutely* and *in fee simple.* He gives the personalty absolutely, and he devises the realty in fee simple. This is the fifth clause of the will, and by the same species of concentrated and elliptical expression, he directs in the third clause of the codicil the same residue, *given* and *devised* to his daughters, to be "*given to,* and be *vested in,*" the trustee *absolutely* and in *fee simple,* in trust to repair and rent the *real estate* and securely invest the *personal estate,* for the use of his daughters. Then when he provides for the contingency which has happened, to wit, the death of a daughter without a will, children or issue, he directs that the principal shall go to the *heirs* and *next of kin* of the daughter so dying. It is impossible to doubt, from this language, that the distinction between real and personal estate was constantly in the mind of the testator, and that he intended that the part of the principal which consisted of realty should go to the heirs, and the part which consisted of personalty should go to the next of kin. We think we would be doing violence to the manifest intention of the testator if we held to any other construction. There is no occasion here to give an untechnical meaning to technical words, as was done in the cases referred to in the appellant's argument, in which the word *heirs* was held to have the same meaning as next of kin, or distributees, or persons entitled under the intestate law. Such a course is sometimes necessary to effectuate a testamentary result, to prevent a will from becoming practically inoperative. Thus if a testator gives personalty to a class of persons whom he names as *heirs,* the law in aid of his intent will consider the word as descriptive of the persons who would take as the representatives by law of the deceased person. This doctrine is illustrated in various forms and circumstances in Patterson *v.* Hawthorn, 12 S. & R., 112; Buckley *v.* Reed, 3 Harris, 83; Gibbons *v.* Fairlamb, 2 Casey, 217; Eby's Appeal, 3 Norris, 241, and other cases. These cases, however, do not at all conflict with those of the other class which hold that where technical words are used, and there is a subject to which they may apply, the technical meaning must prevail. Thus in Clark *v.* Scott, 17 P. F. S., 446, where a testamentary disposition was made quite similar to the one we are considering, this rule was strictly applied. On p. 451 SHARSWOOD, J., said: "The testator, Thomas P. Ash, after devising his residuary estate, real and personal, to several persons, declared that in case of the death of either of them before him, the devise or bequest should not lapse, 'but shall go to, and be taken by the heirs,

executors or administrators of said legatees or devisees so dying, in the same manner as if the same had been specifically devised.' He was evidently aware of the distinction between real and personal estate. He has used throughout his will the words legally appropriate to each. All his legacies of mere personalty are by the words 'give and bequeath,' but when he comes to the residuary clause in which he blends both his real and personal estate, he is careful to use the words 'give, devise and bequeath,' and adds a limitation to 'heirs, executors, administrators and assigns.' We may infer then that in the substituted gift for the lapsed devise the word 'heirs' was used in none other than its legal technical meaning. Apart, however, from this very important assistance at arriving at the true intention of the author of the disposition, it is a canon of construction settled in many cases, that the word 'heirs' shall receive its appropriate technical sense, unless there is some language or expression which shows that it was used in the broader and more popular sense." Other illustrations of this ruling are found in Ralston *v.* Waln, 8 Wr., 279; Porter's Appeal, 9 Wr., 201, and Eby's Appeal in Wisler's Estate, 14 Wr., 311. It does not seem necessary to pursue the subject further. Whether we consider the strict meaning of technical words employed, or the clear intent of the testator, as the guide in the construction of this testament the result is the same. The husband is neither the heir nor the next of kin of his wife in the technical sense of those words, and there being other persons in being who do fill that description we must hold that they, and not he, are the true beneficiaries under this codicil.

Decree affirmed at the cost of the appellant.