## Donaldson's Estate

*Norman E. Clark,* for accountant.

*Wrenshall & Richman,* for petitioner.

*George W. West* and *George W. Weaver* for respondent.

CRUMRINE, P. J., April 1, 1936.—James P. Donaldson died on December 13, 1892, leaving a will by the terms of which he gave his widow, Catherine Donaldson, a life estate in his property, and then provided:

"It is my further will that at the decease of my wife, Catherine before named, all my estate shall be settled up and equally divided share and share alike to each of my children or their surviving heirs".

Catherine Donaldson, the widow, died on August 28, 1934. John W. Donaldson was a son of James Donaldson, and he died on May 16, 1930, leaving one child, Helen Riley, and a widow, Emma Donaldson. By his will, John W. Donaldson left his entire estate to his widow.

Helen Riley, the daughter, contends that the legacy to John W. Donaldson was contingent on his surviving his mother, which condition was not fulfilled, and that on the death of Catherine the interest vested in Helen Riley as the only "heir" of John W. Donaldson under the will of James Donaldson.

Emma Donaldson's position is that an undivided interest in remainder vested in John W. Donaldson on the death of his father, which interest passed at his death, under his will, to his widow.

The very able brief submitted by counsel seems to assume that the one question involved is whether the legacy to John W. Donaldson, one of the children, is vested or contingent, and they have cited most of the important cases bearing on that subject.

I do not see that this question is vital or its discussion necessary, for this reason: Under the terms of the will, John W. Donaldson actually could take only in the event that he was living at the death of the life tenant; this, for the very apparent reason that up to that time the life tenant enjoyed the estate. John W. Donaldson's actual possession, then, was a conditional one. If this condition, his survival of the life tenant, was precedent to a vesting of his remainder, the technical estate in him was contin-

gent, but if it was subsequent then the estate was vested A determination of the character of the condition, subsequent or precedent, determines the character of the estate, vested or contingent. But here the condition had actually happened at the time the life tenant died. John W. Donaldson was already dead. And even if the remainder in him had been a vested one, it would have become divested by the condition which had happened, and the alternative bequest to his "heirs" would have become effective.

On this point, the case of Carstensen's Estate, 196 Pa. 325, is most instructive. The facts were not dissimilar from those before us. The will provided:

"And from and after the decease of my said husband [who had been given a life estate], I give, devise, and bequeath the whole estate then remaining to my brothers and sisters; the child or children of any of my said brothers or sisters who may then be dead, to take and receive the share that his or their parent would have taken if living."

All of the brothers and sisters died during the continuance of the life estate, except two. Some of those dying left children and others did not. The court found that the legacies vested in the brothers and sisters at the death of the testatrix, but, in discussing the effect of the deaths of some of them during the lifetime of the life tenant, the court said:

"But should any of the brothers or sisters die during the life tenancy, the effect would be, under the clause we have just quoted, to divest the interest the deceased parent acquired under the preceding clause of the will. The substituted legacy would thus become complete on the happening of the contingency and the interest would vest in his surviving child".

In Tomlinson's Estate, 23 Dist. R. 347, the words of the will are almost identical with those being considered:

"After the death of my wife Hannah C. Tomlinson my will is that my estate be divided equally between my

nephews and my nieces and the heirs of those who are deceased, the heirs of those who are deceased to have the parent's share".

After deciding that the context indicated that the word "heirs" was intended to mean "children", and that the children of deceased nephews and nieces were intended to participate in the distribution with living nephews and nieces, the court said:

"This is in accordance with Carstensen's Estate, 196 Pa. 325, where it was held that, although the remaindermen took vested interests at the death of the testator, those interests were subject to be divested in case of their death during the pendency of the life estate leaving issue; and with Burk's Estate, 21 Dist. R. 357, the latest case in this court on the subject, where the testatrix directed her estate, after the death of the life tenant, to be converted into money and the net proceeds thereof divided among the children of her sisters *per stirpes*, the children of any deceased child of her said sisters to take only the share the parent would have taken if living, and we held that the children of nephews and nieces who had died during the pendency of the life estate took in substitution for their parents."

The argument of counsel for the widow overlooks the fact that there is a substitutionary legacy, and that a mere vesting is not sufficient to give John W. Donaldson an estate which he could pass on by his will to the exclusion of those who were named by the testatrix as alternative beneficiaries.

In Heath's Estate, 286 Pa. 335, 343, the conclusion is well stated:

"But, whether we hold that the rule in Carstensen's Estate applies, and that the remainders to testator's children were vested, subject to be divested in the case of any such remaindermen dying during the life-tenancy, leaving children, or that the rule in Mulliken v. Earnshaw (p. 231) applies,—that 'Where real or personal

estate is devised or bequeathed to . . . such children who shall . . . be living at a certain [future] time, without any distinct gift to the whole class preceding such restrictive description, so that the uncertain event forms part of the description of the devisee or legatee, the interest so devised is necessarily contingent on account of the person,'—the result is the same; for here the child in question (son of testator and father of appellant) died, during the life-tenancy of his mother (the widow of testator), leaving children, hence his estate, if vested, was divested in favor of these children, or if contingent, never came into his possession for testamentary disposition. All of which leads to the conclusion that the decree complained of is unassailable."

So, here, whether the remainder was vested or contingent, the condition, the remainderman's death before his mother, has happened, and the substitutionary bequest to his "heirs" takes effect.

Our next consideration is the effect of the word "heirs" as used in the will, and first with regard to a line of cases which, if this rule is still in effect, might be considered as having a bearing on the conclusion reached above.

Beginning with Patterson, Exec., v. Hawthorn, Admr., 12 Serg. & R. 112, and running through King v. King, 1 Watts & S. 205, McGill's Appeal, 61 Pa. 46, Mull's Execs. v. Mull's Admr., 81 Pa. 393, Muhlenberg's Appeal, 103 Pa. 587, up to Reed's Appeal, 118 Pa. 215, the court lays down the doctrine that, in the gift of an estate at a future time to a designated person "or his heirs", the word "heirs" is to be construed as a word of limitation rather than of purchase, working a vesting in the designated person instead of operating to establish alternative beneficiaries. Little reason is given for this conclusion, but it would seem to be by way of analogy to the Rule in Shelley's Case, which at that time was not subject to the degree of adverse criticism that it later acquired.

I do not consider these cases as controlling here: first, because the clear intention of the testator is to the contrary, evidenced by his general scheme of distribution and the use of the word "surviving" as modifying the word "heirs"; second, because I have been able to find no case after Reed's Appeal, supra, which enunciates the rule, doubtless for the reason that the principle of the Rule in Shelley's Case was falling into disrepute, as subversive, in most cases, of the clear intention of the testator. I am referring to these cases here, more for the purpose of calling their rule to the attention of counsel, should they wish to consider it further, than from a belief in their importance.

But there is another angle from which we must consider the word "heirs". Counsel for Helen Riley contend that the word "heirs", as used in the will, manifestly means children or their descendants and that the wife cannot be included in that designation. I do not agree with this conclusion. The fund for distribution originally was and still is personalty, and the decisions in this State are practically unanimous in holding that, where personalty is the subject of the gift, the word "heirs" is to be construed as those who would take under the intestate laws; in the case of real estate it is different: Baskin's Appeal, 3 Pa. 304; Woods' Appeal, 18 Pa. 478; Eby's Appeal, 84 Pa. 241; McKee's Appeal, 104 Pa. 571; Ashton's Estate, 134 Pa. 390; West's Appeal, 214 Pa. 35; Wunder's Estate, 270 Pa. 281; Whetherill's Estate, 4 D. & C. 667, and many others.

I shall refer but briefly to the cases cited by counsel for Helen Riley.

In Dodge's Appeal, 106 Pa. 216, the distinction between realty and personalty is clearly recognized, the court saying, at page 220: "If the fund for distribution were personalty the widow would perhaps be entitled to participate therein; but inasmuch as it bears the impress of realty. . . ." In Ivins' Appeal, 106 Pa. 176, while no mention of

the distinction is made in the opinion of the Supreme Court, it is clearly drawn in the lower court's opinion, which was affirmed. The same distinction is clearly made in the third case cited, Lesieur's Estate, 205 Pa. 119, 122: "If the gift had been of personalty, the answer would have been in the affirmative: Eby's Appeal, 84 Pa. 241. But this is a disposition of real estate". I find that the word "heirs", as used in the provision quoted, is to be taken as meaning those who would have taken under the intestate laws, and includes the widow, who, with the daughter, shares the estate equally.

I believe the foregoing conclusions to be sound under the decided cases. Further, I believe the results to be precisely what the testator intended, which is not always the same thing.

"It is my further will that at the decease of my wife, Catherine before named, all my estate shall be settled up and equally divided share and share alike to each of my children or their surviving heirs".

That seems about as clear as words could make it, and 999 out of every thousand intelligent laymen would arrive at the testator's meaning at one reading, with possibly some hesitation at the word "heirs". If the children all lived they were to take it in equal shares, but if any was dead at the time of distribution his share was to go to his heirs.

This account came to us on the petition of the trustee, joined in by what purported to be all of the parties in interest, but not including Emma Donaldson, the widow of John W. Donaldson, whose existence seems to have been unknown to or overlooked by the other parties in interest. The petition had attached to it an account of the trustee and a schedule of distribution, agreed by all the parties in interest to be correct and in which Helen Riley, daughter of John Donaldson, was awarded a full one-sixth share, or $1,603.73, which would have been the share going to her father had he lived. Emma Donaldson, the widow of John

W. Donaldson, now prays that the proceeding be opened, the account reaudited and the schedule of distribution corrected and amended by allowing her to participate therein.

And now, April 1, 1936, for the reasons set forth in the foregoing opinion, the decree of this court dated February 21, 1935, is hereby amended by adding thereto the following paragraph, provided, however, that in the schedule of distribution attached to and made a part of the petition the award "To Helen Riley, daughter of John Donaldson, deceased son of James Donaldson, one sixth, $1,603.73" shall be stricken out and in place and in lieu thereof there shall be added the following:

"To Helen Riley, daughter of John Donaldson, deceased, son of James Donaldson, one twelfth, $801.87.

"To Emma Donaldson, widow of John Donaldson, deceased, son of James Donaldson, one twelfth, $801.86".

This decree is filed nisi, exceptions sec. reg. et sec. leg.