# McGill's Appeal.

1. A bequest was " to M. of the proceeds of bank stock during her life, after her decease to be sold and the proceeds equally divided between T. and G.' or *their heirs*, unless the said T. and G. should prefer it to remain in stock for their use, which they may do should they prefer it." *Held*, that the bequest vested in T. and G. at the testator's death, and an assignment by them before the death of M. passed the title to the stock.

2. Patterson *v.* Hawthorne, 12 S. & R. 112; King *v.* King, 1 W. & S. 205; Reed *v.* Buckley, 5 Id. 517; Manderson *v.* Lukens, 11 Harris 31, considered and approved.

3. Where the enjoyment of an entire fund is given in fractional parts at

[McGill's Appeal.]

successive periods which must eventually arrive, the distinction between time annexed to payment and time annexed to gift is unimportant, all the interests vest together.

February 5th 1869. Before THOMPSON, C. J., AGNEW, SHARS- *absent †.* WOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Appeal from the decree of the Orphans' Court of *Philadelphia:* In the estate of James McCulloch deceased: No. 6, to January Term 1869.

James McCulloch, the decedent, died in August 1830, having made a will dated August 6th 1829, with several codicils, the last dated July 29th 1830 and proved August 23d 1830. Amongst other provisions of the will and codicils were the following:—

"To Margaret McCormack, my present housekeeper, I leave the proceeds of eighty shares of bank stock, which must be reserved for that purpose in the Mechanics' Bank of the city and county of Philadelphia, the proceeds of said eighty shares of stock she is to have in full during her natural life, after her decease these shares must be sold and disposed of as hereafter mentioned, and should my executors at any time think it safer or more advantageous to sell out these eighty shares of stock and invest the capital in some other stock which they might prefer or think more secure, they are at full liberty, and I hereby enjoin on them, should they think it necessary, not to omit doing so, and if they at any time again after first removal should think it insecure, they may and ought to tranfer it from one stock to another, until they are perfectly satisfied of its safety, the proceeds, whatever they may be, or whatever transfers may be made, still to be paid over to said Margaret or her order, during her life.

"In addition to the interest of the above eighty shares of stock, I leave her, the above-named Margaret McCormack, $150 for ever, out of the sale of furniture I may be possessed of at my decease." * * *

"After the decease of Margaret McCormack, the eighty shares of bank stock, the interest of which she is to receive during her life, must be sold, or should it be changed by my executors into any other stock or property (whatever the investment may be) is to be sold and the proceeds equally divided between the above-named T. H. Baird and George McCulloch or their heirs, unless the said Thomas and George would prefer it to remain in stock for their use, which they may do, should they prefer it. At this time the eighty shares is worth about three thousand four or five hundred dollars. * * *

"I do also appoint William Wilson and James Boggs, of the firm of Messrs. Knox & Boggs, trustees (if they will have the goodness to act) for collecting and remitting to Margaret McCormack, her dividend or half-yearly payments, in the best manner, and with as little delay and expense as possible.

† I was absent from Feb. 5 to Feb. 13 inclusive owing to the dangerous illness of my son. G. S.

[McGill's Appeal.]

"Duties of said trustees to commence whenever those of my executors cease." * * *

On the 24th of April 1846, George McCulloch assigned to John Lyon all his "right, title, interest and claim whatsoever of, in and to all the shares of stock in the Mechanics' Bank," which he held or was entitled to "by bequest under the last will and testament of James McCulloch," constituting Lyon his attorney in fact to transfer, and binding himself to do everything necessary "for the more effectually transferring the said shares" to Lyon. George McCulloch died April 6th 1861, leaving to survive him the following children: Jane M., wife of David Wilson, Ellen A., wife of Alexander T. McGill, Priscilla T. McGinty and Joseph McCulloch. Administration of his estate was granted to David Wilson.

On the 8th of April 1863, Thomas H. Baird assigned to "Jane M. Wilson for her own use and that of the other heirs of George McCulloch all (his) right, title, interest and claim to that portion of the said eighty shares of stock in the Mechanics' Bank—devised to the said George McCulloch and (himself) after the death of said Margaret McCormack by the will of the said James McCulloch." Margaret McCormack died February 14th 1865. All the executors of the will having previously died, administration *d. b. n. c. t. a.* was granted to J. Cooke Longstreth, Esq. His account, showing a balance consisting of 80 shares of Mechanics' Bank stock, and $412.95 in cash arising from dividends which had accrued on the stock since the death of Margaret McCormack, was referred to Henry E. Wallace, Esq., as auditor for distribution.

The claimants before the auditor were the children of George McCulloch, who claimed as his heirs as to one-half of the bank stock, and as to the other half under the assignment by Thomas H. Baird: and on the other side John Lyon, who claimed one-half of the stock under the assignment from George McCulloch. The auditor reported that George McCulloch and Thomas H. Baird took vested interests in the bank stock, and that the cash balance, after deducting collateral inheritance tax, expenses of audit, &c., was $110.83.

He concluded:—"The accountant will therefore transfer to John Lyon, assignee of said George McCulloch, forty shares of the stock of the Mechanics' National Bank of Philadelphia, and pay him one-half the above cash balance, $55.41. And will transfer to Jane M. Wilson, for the use of the parties named in said assignment and herself, the other forty shares of the stock aforesaid, and pay to her for the same uses one-half the above cash balance, being $55.41."

Exceptions were filed by the children of George McCulloch to the distribution of the half of the stock bequeathed to him.

[McGill's Appeal.]

The Orphans' Court (Pierce, J.) overruled the exceptions and confirmed the report. Ellen A. McGill and the other children of George McCulloch appealed from the decree of confirmation and assigned it for error.

*C. E. Patterson*, for appellants.—The bequest was a substitutional or alternative bequest to enure to McCulloch and Baird in case they survived Mrs. McCormack: Smith on Executory Interests 45, pl. 134; Crooke *v.* De Vandes, 9 Ves. 197; Montague *v.* Unicella, 1 Russ. 125; Salisbury *v.* Peltz, 3 Hare 93; Hervey *v.* McLaughlin, 1 Price 264; Browell *v.* Baskerfield, 11 Beav. 525; Penley *v.* Penley, 12 Id. 517; Sparks *v.* Restal, 24 Id. 218; Timins *v.* Stackhouse, 27 Id. 434; Chipchase *v.* Simpson, 16 Simons 485; Merrick's Trusts, Law Rep. 1 Eq. 551; Davenport *v.* Hanbury, 3 Ves. 257; 2 Redfield on Wills 386; 2 Roper on Leg. 1413; Porter's Trusts, 4 K. & J. 188; Girdlestone *v.* Doe, 2 Simons 225; In re Craven, 23 Beav. 333; Dovdy *v.* Higgins, 9 Hare, App. xxxii. 1852; Price *v.* Lockley, 6 Beav. 180; Gettings *v.* McDennott, 2 Mylne & K. 70.

The general intent of the testator is clear to create a substitutional interest; and it should prevail over technical rules: Roper on Legacies 1460, 7th and 8th rules; 1 Redfield on Wills 471; Mortimer *v.* Hartley, 6 Exch. 47; Grey *v.* Pearson, 6 Clark's Ap. Cas. (N. S.) 61; Cooke *v.* Morehouse, 34 Beav. 27; Ferguson *v.* Dunbar, 3 Bro. C. C. 469; Still *v.* Spear, 9 Wright 170; McKeehan *v.* Wilson, 3 P. F. Smith 74; McBride *v.* Smyth, 4 Id. 245. Unless the testator's intention to the contrary can be made to clearly appear, it will be held, in cases of bequests in remainder after a precedent life estate, that the death of the legatee over means his death before that of the first taker, rather than death at any time generally, or, indeed, death before the testator: Ulrich *v.* Litchfield, 2 Atk. 375; 1 Roper on Legacies 611; Gallaud *v.* Leonard, 1 Swanst. 161; Clark *v.* Gould, 7 Sim. 197; Smith on Exec. Int. 659; Horne *v.* Pillans, 2 My. & Keene 15–22.

*C. E. Lex*, for appellee, cited Patterson *v.* Hawthorne, 12 S. & R. 112; King *v.* King, 1 W. & S. 205; Reed *v.* Buckley, 5 Id. 517; Buckley *v.* Reed, 3 Harris 83; Manderson *v.* Lukens, 11 Id. 31; Womrath *v.* McCormick, 1 P. F. Smith 504; Young *v.* Stoner, 1 Wright 105; Mutter's Estate, 2 Id. 314; Stehman's Appeal, 9 Id. 398; Ross *v.* Drake, 1 Id. 373; Burd *v.* Burd, 4 Id. 182.

The opinion of the court was delivered, March 11th 1869, by

THOMPSON, C. J.—The point of this case, it seems to us, is to ascertain whether, by our decisions, the bequest over to George McCulloch and Thomas H. Baird, of the bank-stock bequeathed

11 P. F. SMITH—4

by the testator to Margaret McCormack for life, passed and was vested in them in unlimited ownership, absolutely and unqualifiedly, so as to permit an assignment of it in anticipation of this period of enjoyment.

The bequest was to Margaret McCormack of the proceeds of 83 shares of stock of the Mechanics' Bank for life, and after her decease to be sold, and the proceeds equally divided between the above-named Thomas H. Baird and George McCulloch, " *or their heirs,*" &c., unless they should prefer to take it as it was, or may have been invested by the executors under a power in the will.

It has been ably argued by the exceptants' counsel, that the words show that the bequest to Baird and McCulloch " *or their heirs*" are substitutionary, or perhaps more correctly, alternative bequests. That is to say, if either of them died before the life interest in Margaret McCormack was exhausted, in that event it was to go, by virtue of the bequests, directly to the heirs of the deceased party, as from the testator.

On the other side, it has been as zealously contended that these words, " or their heirs," import a limitation to whoever might legally represent such deceased legatee, and if undisposed of in any way by him, it would pass in administration as his property at the time at which it would have passed into his actual possession had he lived, and that it was vested so as to enable the remainder-men to assign it, as both did, before the decease of the first taker.

The authorities cited for this as the rule in this state, are Patterson *v.* Hawthorne, 12 S. & R. 112; King *v.* King, 1 W. & S. 205; Reed *v.* Buckley, 5 Id. 517; Buckley *v.* Reed, 3 Harris 83, and Manderson *v.* Lukens, 11 Id. 31. The words in these cases specially adjudicated upon are identical with those which give rise to the doubt in the case in hand. Tilghman, C. J., in the first of these cases, asks, " what did the testator mean by the words ' *or their heirs ?*' I understand it as if he had said, *to be paid* to such person as would be *entitled to it as their representatives* by the law of the country, that is to say, it was not, in case of the death of one, to go to the survivors, but to be considered as if vested in the deceased child."

It is not correct to say that this was an *obiter dictum* on the part of the Chief Justice. It was the very point in contest, and not whether the husband could have taken under the alternative bequest. That may have been a point not so clear, under the provisions in the will in that case.

In King *v.* King, *supra*, where the same collocation of words is to be found in the will as in the last, and I may say in the present case, Gibson, C. J., declared that their effect was a vesting of the legacy according to Patterson *v.* Hawthorne, a case he thought not

distinguishable from that under consideration. Some question was made in that case, whether the legacy was vested or contingent, and was disposed of in the opinion of the Chief Justice on abundance of authority cited by him, mostly English, that "where the enjoyment of an entire fund is given in fractional parts, at successive periods, which must eventually arrive, the distinction between time annexed to payment and time annexed to the gift becomes unimportant. In such cases it is well settled that all the interests vest together. Thus, a legacy to one for life, and to another at his death, goes to the legal representatives of the latter, should he not live to take it."

It was essential to the soundness of the decision in that and the preceding case, and all others which have or shall follow, that the legacy in the second taker should be vested, and the rule is undoubted that it is; were it not, it could not go to assignees or the personal representatives of what might be called the remainder, as we have seen it does. These cases were followed at intervals by the others which I have referred to, and the same interpretation has been applied to the same words in all of them.

We need not enlarge in defence of the positions assumed by the auditor and the court below, in the presence of these authorities; they are binding on us, and are too numerous to be disregarded, even if there might be doubts of their original soundness, which I do not, by any means, entertain. I may remark, however, that it is very likely the words "or their heirs" added to the bequests to Thomas H. Baird and George McCulloch, were to prevent any claim of survivorship, if one of them should happen to die before the time should arrive for the payment of the legacy. That was thought to be the reason for the use of the words in Patterson v. Hawthorne, but this did not in any of the cases have the effect of preventing the vesting of the legacy on the principles already stated. In this view of the case, McCulloch had the power to transfer his interest in the bequest to him of an equal share of the bank-stock or its proceeds before the death of the first taker, as he did, and so also as did Baird. Had he not done so, it would have passed to his administrators, and through them to his heirs, on the principle of the cases cited.

It seems true, as contended by the learned counsel for the exceptants, that a different rule prevails in England as to the effect of such words as we have here, in a will; but as we have authorities directly in point in our own court, I have not thought it necessary to investigate the process by which they arrive at the conclusion that alternative bequests take effect after vesting in the legatee over. For the rule of vesting, if I understand it, holds them to exist on the principle we have stated in this case, and which operates here. We will not trouble ourselves, how-

[McGill's Appeal.]

ever, about this.  We must affirm the decree made in the court below.

The decree of the Orphans' Court is affirmed, and the appeal is dismissed at the costs of the appellants.