## APPEAL OF C. A. LITTLE, ADMINISTRATOR.

### FROM THE DECREE OF THE ORPHANS' COURT OF WYOMING COUNTY.

Argued March 15, 1887—Decided October 3, 1887.

A testator by his will provided: (*a*) That the residue of his estate should be converted into money and after all his debts were paid his executors were to make semi-annual distributions on stated dates, the money to be divided into twenty parts of which there were to be distributed " to J. R. M. and his heirs, four parts, that is the four parts are to be paid to J. R. M. during his lifetime, and after his death the same to be paid to his heirs; " (*b*) that the shares of the several distributees were to be claimed by them within two years after his decease, or else to lapse into the general fund; (*c*) that no money should be paid to the distributees without a receipt therefor and a release of all claims against the estate; (*d*) That "in case of the death during the term of said renewal lease of any of the said distributees, the share of such decedent . . . . . if of the heirs of J. R. M., shall be equally divided among the surviving heirs of said M.; " (*e*) that if any of the gifts should fail to vest because of the beneficiary contesting the will, or neglecting or refusing to accept on the condition that the benefit should be in satisfaction and release of any claim or demand against the estate, the share of such recusant was given to the other members of the class to which he or she belonged. The testator died August 24, 1884. The executor filed an account December 6, 1884, confirmed nisi January 14, 1885, and absolutely April 15, 1885. Without having executed a release, but having written a letter to the executor asking at what date he might expect his share, J. R. M. died on March 29, 1885, leaving two sons and one daughter, and a will by which he gave his entire estate to said daughter. *Held:*

1. That the gift to J. R. M. was not to be simply inferred from the direction to pay, but was a vested and absolute gift unaffected by the postponement of payment, or by the use of the word "heirs," by way of limitation and not of purchase.
2. That the character of the bequest was unaffected by the provision that

Statement of Facts.

the shares of the distributees were to be claimed within two years after his decease or else to lapse, and the inquiry contained in said letter was a sufficient claim.

3. That because the legatee died within the two years it was not to be assumed that he would not have complied with the requirement as to a release, and this condition could be complied with by his administrator.

4. Nor was the absolute character of the gift affected by the provision for a distribution among the survivors of the share of one of the heirs of J. R. M. who might die during the term of said lease.

5. Nor did the provision for the failure of a bequest or devise to vest because of the failure or refusal of the beneficiary to accept upon the condition as to a release required, affect the absolute character of the gift; and the said four parts bequeathed to J. R. M. were payable to his administrator.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.; CLARK, J., absent.

No. 263 January Term 1886, Sup. Ct.

This cause arose in the distribution of a balance shown by the first partial account of B. M. Hall, executor of the will of Wm. B. Moneypenny, deceased, who died on August 24, 1884. The material parts of said will, which was dated June 6, 1876, and of a codicil thereto, dated June 12, 1878, were as follows:—

7. All the rest, residue and remainder of my property not herein before mentioned, real, personal and mixed, I direct my executors to sell and convert into money as soon as the same can be done prudently, and without loss or sacrifice, and to apply the proceeds, together with the rents and income of the said leased property in New York City and all other income of my said estate not hereinbefore specifically bequeathed, in the following manner, to wit:

1. To the paying off all indebtedness . . . . .

2. After all indebtedness is thus discharged I direct them to make semi-annual distributions of whatever money may remain in their hands on the tenth day of May, and the tenth day of November in each year, the said money to be divided into twenty parts and to be distributed as follows, viz: To Matilda Lutes, five parts. To Thomas J. McComb, five parts. To the heirs of my brother Robert Moneypenny five parts. To Doctor J. R. McComb and his heirs, four parts, that is the

four parts are to be paid to Dr. J. R. McComb during his lifetime, and after his death the same to be paid to his heirs. To my cousin, Mary Moneypenny, one part. All which distributive shares are to be paid without interest, and none of the said shares are in any case to bear interest. And the said semi-annual distributions are to be made so long as the term of the aforesaid renewal lease shall continue in case it shall be renewed. . . . . .

No money is to be paid to any of the above mentioned distributees without a receipt being taken from them and a release of all claims and demands against my estate and the estate of Mary Moneypenny, deceased. In case of the death, during the term of the said renewal lease, of any of the said distributees, the share of such decedent, if he or she be one of the heirs of my brother, Robert Moneypenny, deceased, shall be equally divided among the surviving heirs of my said brother; if of the heirs of Dr. J. R. McComb, among the surviving heirs of the said McComb, and in case of the death of either or both, Thomas J. McComb and Matilda Lutes, their shares shall be equally divided among the surviving heirs of my brother, Robert Moneypenny, deceased. And in case of the death of my cousin, Mary Moneypenny, her share is to be equally divided among the remaining surviving distributees. Provided however, and I expressly direct that the said shares of the several distributees are to be claimed by them within two years after my decease, or else to lapse into the general fund and be distributed according to the aforesaid proportions, to such distributees as claim their shares, and no share is to be held by my executors at any time for a longer period than two years, nor shall any legatee be at any time entitled to claim any distributive share after two years from the time it is due; but all such shares unclaimed for the space of two years after the same are due shall lapse into the general fund, and be distributed to the other distributees as aforesaid.

8. Upon the determination of the life estates hereinbefore devised to Matilda Lutes and to Thomas J. McComb in the lands as aforesaid, and also upon the determination of the term of years in the New York City property as aforesaid I hereby direct, authorize and empower my executors to make sale of the said several pieces of land, and divide the proceeds

equally between the heirs of my brother, Robert Moneypenny, deceased, and Dr. J. R. McComb, or his heirs, that is, one half to the Moneypenny heirs in equal portions among them, and the other half to Dr. J. R. McComb, or in case of his decease to his heirs in equal portions among them, such sales and divisions to be made as each of the said particular estates shall determine.

10. I hereby declare that it is my will and intention that each and every, of the herein contained legacies, bequests and devises is given upon the express condition precedent that the same shall be accepted in full satisfaction and release of any right in, or claim or demand against my own estate or the estate of Mary Moneypenny, deceased, and in case any of them should fail to vest because of any legatee or devisee contesting this my will, or neglecting or refusing to accept the bequest or devise upon such condition, then I give, bequeath, and devise the share of such recusant to the other members of the class to which he or she may belong, to be equally divided among them, and in case such party should not be a member of any particular class, then such share to be divided generally among all the other legatees and devisees. . . . .

The codicil recited a renewal of the lease of the New York property for a term of years, revoked the disposition made of the property in the will, and devised the same to his executors in trust to receive the rents and profits thereof during the joint lives of Matilda Lutes and Thomas J. McComb and the life of the survivor of them, and to pay over and divide the same in the proportions and at the times mentioned in the second subdivision of the seventh clause of the will; and upon the death of such survivor he ordered his executors to sell said property subject to the lease thereof and "to divide the net proceeds of such sale equally between the persons who shall then be the nearest heirs of my deceased brother, Robert Moneypenny, and Dr. J. R. McComb, or his heirs if he be then dead; that is, one half to the Moneypenny heirs in equal portions among them, and the other half to Dr. John R. McComb, or in case he be then dead, to his heirs in equal portions among them."

On September 8, 1884, letters testamentary were issued to B. M. Hall, one of the executors nominated, who filed his first

partial account on December 6, 1884, which was confirmed on April 15, 1885, and showed a balance for distribution of $6,425.49. *Mr. Charles E. Terry,* appointed an auditor to distribute said balance, made a report showing that after the allowance of two small claims which were proved before him and the costs of a tombstone and of the audit, there was a balance for distribution among the legatees of $5,677.20, of which sum the auditor awarded generally to the heirs of Dr. J. R. McComb the sum of $1,185.15, "without attempting any division among them, leaving such division for future action," etc. The report was confirmed on June 3, 1885, except as to the share awarded to the heirs of Dr. J. R. McComb, which was referred back to the auditor for further distribution, when the facts following appeared:

Dr. J. R. McComb died in New York city on March 29, 1885, leaving to survive him two sons, John R. and William T. McComb, and one daughter, Jane W. McComb, all of full age and still living. He left a will, duly proved, bequeathing and devising all his estate, real and personal, to his daughter, whom he appointed his executrix and who received letters from the surrogate in New York city. Afterwards ancillary letters were issued to Mr. C. A. Little in Wyoming county, Pennsylvania.

No express demand for his benefits under the will of Wm. B. Moneypenny was made by Dr. J. R. McComb in his lifetime, but, in a correspondence with B. M. Hall, the accountant, he addressed him a letter dated December 1, 1884, in which was contained: "In your kind note to me, October 4, you offered any information I may want to address you on the business of Mr. Moneypenny's will. Will you kindly inform me at what date I may expect my share? I am now nearly 83 years old, weak and feeble, and many calls for money just at this time, and my income is very limited." And no release of any rights in, or claims against, the estate of the testator and that of Mary Moneypenny (who was the testator's mother) was ever tendered by Dr. J. R. McComb; but on the day of the audit, Mr. C. A. Little, administrator, c. t. a., of Dr. McComb, passed to the accountant a writing wherein it was stated that he was ready to comply with the conditions mentioned in the will upon payment to him of the share due to Dr. J. R. Mc-

Comb. On the same day the counsel for Wm. T. and John R., the sons of Dr. J. R. McComb, delivered to the accountant a deed of release drawn to comply with said conditions.

Under the will and these facts, it was claimed before the auditor on behalf of the executor of Dr. J. R. McComb and of his daughter and devisee Jane W. McComb, that the whole fund for distribution belonged to them for the reasons:

1. Because the bequest, being to Dr. McComb "and his heirs," or to him "or his heirs," the whole legacy, including the amounts of future distributions, vested in Dr. McComb at the death of the testator, Wm. B. Moneypenny.

2. Because the said testator, having directed the payment to Dr. McComb "and his heirs" in four parts, at each semi-annual distribution, and, upon the determination of the life estates devised to Thomas J. McComb and Matilda Lutes, the payment of one half of the net proceeds of the sale of the real estate to Dr. McComb, "or his heirs," the said Dr. McComb thereby acquired the absolute ownership of the whole legacy bequeathed to him and his heirs, applying by analogy the principle of the rule in Shelley's case; and

3. Because, irrespective of the other two reasons, Dr. Mc-Comb having survived the testator, and having also been alive at the time the executor filed his partial account, he became entitled to four parts of the sum for distribution, the moment that account was filed.

The counsel for Wm. T. and John R. McComb urged that the rule in Shelley's case had no application, and that Dr. McComb, having failed in his lifetime to demand his legacy and to signify his willingness to accept the same upon the conditions imposed by the testator, died before any part of the same had vested in him, and that consequently the sum for distribution should be divided among his three children in equal portions.

The auditor, without deciding upon the first two grounds upon which the fund was claimed by Dr. J. R. McComb's administrator and daughter, awarded the whole fund to said administrator upon the third ground, holding that in his opinion the act of the accountant in making and filing his account was a separation of the fund in it specified from the remainder of the estate of the deceased, and it thereby became a fund

Opinion of Court below.

for distribution as to which the rights of the parties then attached. To this report exceptions were filed by J. R. and W. T. McComb, and upon the argument thereof, the court, JOHN A. SITTSER, P. J., filed an opinion, which in part was as follows :—

The will does not say " I give to Dr. J. R. McComb" anything. The gift is only inferred from the direction to pay, and we must look to all of the directions upon the subject of this payment, in order to determine to whom the payments were to be made in order to infer the gift and the nature of it. Upon this subject the will says: " No money is to be paid to any of the above mentioned distributees without a receipt being taken from them, and a release of all claims and demands against my estate and the estate of Mary Moneypenny, deceased; and in case of the death, during the term of the said renewal lease, of any of the said distributees, the share of such decedent, if he or she be one of the heirs of my brother, Robert Moneypenny, deceased, shall be equally divided among the surviving heirs of my said brother; if of the heirs of Dr. J. R. McComb, among the surviving heirs of said McComb," etc.

The testator provides for semi-annual distributions of a fund derived from the sale of certain property and from the rents of real estate. This real estate on the corner of Greenwich and Chambers Sts., N. Y. city, had been leased for 21 years from the 1st of May, 1879. These semi-annual distributions are to continue during the lives of Matilda Lutes and Thos. J. McComb and the life of the survivor of them. The will directs among whom these distributions are to be made as the time arrives for their being paid over, and provides for the death of any of the distributees as well as for a failure of any to claim or to release, etc.

It is claimed on the part of the administrator, c. t. a., of Dr. J. R. McComb, that the words " to Dr. J. R. McComb and his heirs, four parts," are unaffected by the expression, " that is, the four parts are to be paid to Dr. J. R. McComb during his lifetime, and after his death the same to be paid to his heirs," and that the word " heirs " was intended by the testator as a word of limitation and not of purchase. We do not so interpret this will.

We understand by it that these semi-annual payments are

to be made to Dr. J. R. McComb, if he be living to take them, and otherwise complies with the will by accepting them and executing a release, etc., and if he be dead, then the payments are to be made to his heirs, and by the word heirs we think the testator intended to describe persons. He used the word "heirs" as a description of persons when he said, "to the heirs of my brother, Robert Moneypenny, five parts." And when he said, "that is, the four parts are to be paid to Dr. J. R. McComb during his lifetime, and after his death to his heirs," we think he used the word heirs in the same sense. We think it is evident from the whole tenor of the will that he is simply attempting to describe the persons to whom the executors are to pay each of these semi-annual distributions, as the time arrives for their payment.

This matter seems to be put beyond controversy by this provision of the will: "And in case of the death, during the term of the said renewal lease, of any of the said distributees, the share of such decedent, if he or she be one of the heirs of my brother, Robert Moneypenny, deceased, shall be equally divided among the surviving heirs of my said brother; if of the heirs of Dr. J. R. McComb, among the surviving heirs of the said McComb." If the testator intended that these persons should take as the heirs of Dr. J. R. McComb, it was useless for him to provide for survivorship among them; for if they took as the heirs of Dr. J. R. McComb, they would be governed by his will and not by Moneypenny's, and if McComb left no will, then by the intestate laws of the state of New York.

The same thought is expressed in the codicil, where he directs the sale of the New York city property after the death of the survivor of Matilda Lutes and Thomas J. McComb, and the net proceeds of such sale to be divided equally between "the persons who shall then be the nearest heirs of my deceased brother, Robert Moneypenny, and Dr. J. R. McComb or his heirs, if he be then dead; that is, one half to the Moneypenny heirs and the other half to Dr. J. R. McComb, or in case he be then dead, to his heirs in equal proportions among them." There is nothing to be paid to Dr. McComb, unless he be living at the time of the distribution. If he be not living then it is to be paid to the McComb heirs, the same as to the

Moneypenny heirs, as purchasers. In Moore v. Smith, 9 W. 403, it is said, that where there is no separate and antecedent gift, which is independent of the direction and time for payment, the legacy is contingent. "Where the gift is only implied from the direction to pay, it is necessarily inseparable from the direction, and must partake of its quality, insomuch that if the one is future and contingent so must the other be." Lamb v. Lamb, 8 W. 184; King v. King, 1 W. & S. 206; Bayard v. Atkins, 10 Pa. 18; Seibert's Appeal, 13 Pa. 503; Bowman's Appeal, 34 Pa. 23; Gilliland v. Bredin, 63 Pa. 397, are other authorities bearing upon this point. We cannot infer a gift to Dr. McComb from a positive direction not to pay, nor from a positive direction to pay some one else.

Was Dr. McComb living when by the terms of the will these semi-annual distributions were to commence?

This fund from which the semi-annual distributions are to be made is to be devoted, "First, to the paying off all indebtedness that may remain against my said estate, including," etc. "Second, after all indebtedness is thus discharged, I direct them to make semi-annual distributions of whatever money may remain in their hands on the 10th day of May and the 10th day of November, in each year," etc.

The auditor has not found as a fact when the debts were all paid, or even when the precise amount over and above the payment of debts could be known. It appears, however, from his report first made to the court that he was hearing proofs of claims against the estate, some of them disputed by the executor, on the 29th day of May, 1885, which were allowed by the auditor, and that the indebtedness was not all paid up to that date, or definitely known before that hearing. The partial account was not filed until December 6, 1884. It was simply an administration account, out of which debts as well as legacies could be and were taken. And we cannot presume that a distribution could have been made or should have been made on the 10th of November, 1884, less than three months after the death. Therefore, the first semi-annual distribution could not take place until the 10th of November, 1885.

Dr. J. R. McComb died on the 27th of March, 1885, before the auditor held his first meeting, and before the 10th of November, 1885, and under the views above expressed no portion of this fund can be awarded to his administrator, c. t. a.

Dr. McComb not being alive at the time of the first semi-annual distribution, the four parts must be paid to the persons described as his heirs, viz.: Jane W. McComb, William T. McComb and John R. McComb.

A final decree was made in accordance with the foregoing opinion; whereupon Mr. C. A. Little, administrator c. t. a. of Dr. J. R. McComb and Jane W. McComb, sole legatee under said will, took this appeal, assigning as error the overruling of the report of the auditor.

*Mr. W. E. Little* (with him *Mr. C. A. Little* and *Mr. Luke A. Lockwood*), for the appellants:

1. It was error to rule that a gift to Dr. J. R. McComb was only to be inferred from the direction to pay. The testator "disposes" of all his estate; he speaks of "distributive shares," and afterwards calls them "legacies, bequests and devises."

2. But conceding that a gift was only inferable from the direction to pay, yet the direction to pay, while operating in the future, was not contingent. The payments must be made, and twice every year, but the postponement is merely for the convenience of the estate; and, if contingent, the limitation over is to the heirs of the first taker, as heirs. The time is not annexed to the gift, but to the payment, and the legacy was not contingent, but vested: Bayard v. Atkins, 10 Pa. 15; McClure's App., 72 Pa. 415; Pennock v. Eagles, 102 Pa. 290; Pyle's App., 102 Pa. 317; King v. King, 1 W. & S. 205; McGill's App., 61 Pa. 46; Provenchere's App., 67 Pa. 463; Crawford v. Ford, 7 W. N. 532; Patterson v. Hawthorne, 12 S. & R. 112; Buckley v. Reed, 15 Pa. 83; Eby's App., 84 Pa. 241; Mull v. Mull, 81 Pa. 393; Muhlenberg's App., 103 Pa. 587. A contingent legacy is where a right is to accrue upon an event which is uncertain: Corbin v. Wilson, 2 Ash. 178; Manderson v. Lukens, 23 Pa. 31; and legacies are always to be considered vested, unless the intention is manifestly otherwise: Corbin v. Wilson, supra; 2 Redf. Wills, § 50, p. 627; McClure's App., supra; Womrath v. McCormick, 51 Pa. 504; Letchworth's App., 30 Pa. 175. The first taker is regarded as the preferred object of the bounty, and in doubtful cases the gift will be construed to make it effectual to him: Wilson v. McKeehan,

53 Pa. 79; Fitzwater's App., 94 Pa. 141; Rewalt v. Ulrich, 23 Pa. 388; McClure's App., supra; Manderson v. Lukens, supra; Laguerenne's Est., 12 W. N. 110.

3. Conceding, however, that the direction to pay of itself gave but a contingent interest, yet, as the limitation over is to " heirs," the estate is absolute. The word " heirs," when uncontrolled by expressed intention, has the effect to vest a legacy which otherwise would be contingent; in other words it is to be taken as a word of limitation, limiting the bequest, in case of the death of the legatee before the time fixed for payment, to his or her representatives: Muhlenberg's App., 103 Pa. 593; Smith v. Folwell, 1 Binn. 546; Dickinson v. Purvis, 8 S. & R. 71; Smith's App., 23 Pa. 9; Biddle's App., 69 Pa. 190; McGill's App., 61 Pa. 46; Gibbons v. Fairlamb, 26 Pa. 217; Eby's App., 84 Pa. 241; Baughman v. Baughman, 2 Y. 410; Guthrie's App., 37 Pa. 9; Price v. Taylor, 28 Pa. 103; Anderson, Issue, 17; 2 Redf. Wills, 2d ed., 356; Yarnall's App., 70 Pa. 335; McKee v. McKinley, 33 Pa. 92; Doebler's App., 64 Pa. 9; Seibert v. Wise, 70 Pa. 147; Lynn v. Alexander, 59 Pa. 43; Campbell v. Jamison, 8 Pa. 498; Criswell's App., 41 Pa. 288; Physick's App., 50 Pa. 128; Phila. Trust Co.'s App., 93 Pa. 209; Ware v. Fisher, 2 Y. 578; Porter's App., 94 Pa. 332; Cockins' App., 1 Cent. R. 890; Ogden's App., 70 Pa. 501.

*Mr. Bisbee*, of *Bisbee, Ahrens & Decker* (*Mr. B. W. Lewis, Piatt & Sons* and *Mr. Alfred Moore* with him), for the appellees:

1. Cases upon wills have no brothers: Wharton v. Morgan, 62 Ala. 209; and all the parts of a will are to be construed in relation to each other; words are to receive a construction which will give to every expression some effect; the circumstances under which the devisor makes his will are to be considered: 3 Jarman, R. & T. ed. 705, 706, 707; Webb v. Hitchins, 105 Pa. 91; Hulton's App., 104 Pa. 359; McKeep's App., 104 Pa. 571; Ely v. Epps, 20 N. J., Ch., 43; Billingslea v. Moore, 14 Ga. 370; Moser v. Dunkle, 1 Wood. 388; Follweiler's App., 102 Pa. 581; Rewalt v. Ulrich, 23 Pa. 388.

2. A request to Dr. J. R. McComb is simply to be inferred from the direction to pay, and " where the gift is only implied

from the direction to pay, it is necessarily inseparable from that direction and must partake of its quality, insomuch that if the one is future and contingent, the other must be: " Moore v. Smith, 9 W. 403, and cases cited by the court below: 3 Jarman Wills, 457. If a legacy "is not given until a certain future time, it does not vest until that time; and, if the legatee die before that time, it is lost:" Patterson v. Hawthorn, 12 S. & R. 112; 3 Jarman, 453, 454, 456.

3. Each distributee has no standing until he "claims" his share, and the vesting is suspended till the contingency happens: 3 Jarman 429, n. 11, 436, 456; May v. Hill, 5 Litt. 307; Corbin v. Wilson, 2 Ash. 201.

4. The cases in all our states without exception follow these rules: 1. That the rule in Shelley's case is applied, in an apparently proper case, on the presumption that the testator intended its legal effect and sense; 2. But that rule is no exception to the rule that the intent of the testator is the guide for interpretation, and 3. If from the entire will the intention with which the testator used the word "heirs" fairly and satisfactorily appear to have been in any other sense than its technical sense, the rule yields at once to such intention. This will, measured by these rules, does not come within the rule in Shelley's case: Guthrie's App., 37 Pa. 9; Linn v. Alexander, 59 Pa. 43; Campbell v. Jamison, 8 Pa. 498; Dodson v. Ball, 60 Pa. 500; Porter's App., 94 Pa. 332; Yarnall's App., 70 Pa. 335.

5. The legacy in dispute was contingent upon his living until enough facts could be known to enable him to decide whether to "claim" his share or not. He died before performing this condition precedent: 2 Jarman, R. & T. ed., 507, 509, 511, 516, 520; 4 Kent 125*; 2 Story Eq. 1075; Reynish v. Martin, 3 Ark. 330; Hogan v. Curtin, 88 N. Y. 162; Collier v. Slaughter, 20 Ala. 263; Caw v. Walker, 1 Seld. 125; Campbell v. McDonald, 10 W. 179.

OPINION, MR. JUSTICE GREEN:

We cannot agree with the learned court below in holding the bequest to Dr. J. R. McComb and his heirs to be a contingent bequest. The gift is absolute in terms and would certainly have been been payable to Dr. McComb had he lived

until it became payable. The fact of his death before that time arrived is of no moment in determining the character of the legacy as being vested or contingent. Nor is there any merit in the contention that the gift is only to be inferred from the direction to pay and is therefore contingent. The seventh clause of the will directs that the residue of the estate shall be converted into money and applied in the first instance to the payment of debts. After all debts are paid the testator directs his executors "to make semi-annual distributions of whatever money may remain in their hands·on the tenth day of May and the tenth day of November in each year. The said money to be divided into twenty parts and to be distributed as follows, viz.: To Matilda Lutes, five parts; to Thomas J. McComb, five parts; to the heirs of my brother Robert Moneypenny, five parts; to Dr. J. R. McComb and his heirs, four parts; that is, the four parts are to be paid to Dr. J. R. McComb during his lifetime and after his death the same to be paid to his heirs." We cannot understand that the gift to Dr. McComb is only to be inferred from the direction to pay as was the case in Moore v. Smith, 9 W. 403, upon which the learned court below founded its deduction. Before any direction to pay appears in the foregoing words there is, altogether independently of it, first, a positive provision that semi-annual *distributions* of the entire residue shall be made; and secondly, a direction equally positive that the money shall be *divided* into twenty parts and *distributed* among the persons named; inter alia, four parts to Dr. J. R. McComb and his heirs. It is true the testator adds that the four parts are to be paid to Dr. McComb *during* his lifetime, and after his death to his heirs. This payment is not to be made to Dr. McComb *if* he is alive or upon *condition*, or *provided*, that he is alive, but absolutely and without any qualification or condition during his life. In any case of a gift or devise to a man during his life, and after his death to his heirs, which is the ordinary instance of the rule in Shelley's case, there is the same evidence of testamentary intent of a life estate only in the first taker as in the present case, yet the rule applies nevertheless. We regard the gift here as complete before, and without reference to, the payment; but even if the payment, being postponed until after the debts have been ascertained and paid, is to be regarded as

something to be done in the future, it is manifest the postponement is for the mere convenience of the estate. In such case it has been repeatedly held that the postponement does not affect the vesting of the estate, and that this is so even if there be no other gift than is contained in the direction to pay.

Thus, in McClure's App., 72 Pa. 414, WILLIAMS, J., said: " Though there be no other gift than in the direction to pay or distribute in futuro, yet if such gift or distribution appears to be postponed for the convenience of the fund or property, or where the gift is only postponed to let in some other interest, the vesting will not be deferred till the period in question. . . . . . Where the enjoyment of the gift over is postponed to accommodate the estate, or for the payment of debts or to meet any other burden first imposed, and not chiefly on account of the character of the donee, it is regarded as a decisive circumstance in favor of immediate vesting. . . . . . Where there is an antecedent absolute gift, independent of the direction and time of payment, the legacy is vested." In King v. King, 1 W. & S. 205, GIBSON, C. J., said: " Where the enjoyment of an entire fund is given in fractional parts, at successive periods which must eventually arrive, the distinction betwixt time annexed to payment and time annexed to the gift, becomes unimportant. In such a case it is well settled that all the interests vest together." In the case of Patterson v. Hawthorn, 12 S. & R. 112, we held that a bequest in the following words: " At the decease of my wife I do allow the price of my land shall be equally divided among my two sons A and B and my daughters C, D, E and F, or their heirs, in six equal parts," gave vested legacies to the first takers, and one of them having died before her mother, her share was given to her husband as her administrator. In Mull's Execrs. v. Mull's Admrs., 81 Pa. 393, a testator gave the yearly interest of a sum to his wife for life and after her death directed that " the principal shall be equally divided among all my children, or their legal heirs, if any of my children should die before such mentioned period doth arrive "; held, the legacies to his children were vested. In Muhlenberg's App., 103 Pa. 587, GORDON, J., said: " But then again we have it well established in Pennsylvania by an unbroken line of decisions that the word ' heirs ' when uncontrolled by the expressed intention of the

will has the effect to vest a legacy which would otherwise be contingent. In other words, it is to be taken as a word of limitation, limiting the bequest in case of the death of the legatee before the time fixed for payment, to his or her representatives." Other similar cases are McGill's App., 61 Pa. 46 ; Provenchere's App., 67 Pa. 463 ; Eby's App., 84 Pa. 241.

We are equally unable to regard the word "heirs" in this clause of the will as a word of purchase. We think it must be conceded that if the will had stopped at that word the rule in Shelley's case would certainly have applied, and Dr. McComb's interest would be absolute. But the court below thinks because of the immediately following direction that the money should be paid to Dr. McComb during his life, and to his heirs after his death, there was a clearly expressed intention that the word "heirs" should be regarded as a description of persons, who therefore take, not as heirs of Dr. McComb, but independently of him as original takers under the Moneypenny will. As the substance of the legacy is money which must be *paid* to somebody, the direction to pay to Dr. McComb during his life and to his heirs after his death is the appropriate form of expression for transferring or delivering the gift, and we do not think it has any significance as affecting the legal character of the gift.

Nor can we regard the provision as to the distributees' claiming their shares within two years as changing or affecting the character of the bequest to Dr. McComb and his heirs. It is a vested and an absolute gift according to the character of the language which creates it, and, if it be not accepted or positively refused, that circumstance cannot alter its legal status. The only result would be that the legatee does not take it. The question does not arise here, for Dr. McComb not only never refused the legacy, but within a few months after Mr. Moneypenny's death, and long before the two years had expired, wrote a very urgent letter to the executor inquiring how soon he might expect to get his share, that he was 83 years of age, weak and feeble, and had many calls for money and his income was very limited. Most certainly this must be regarded as a claim for whatever was due him and was a strict compliance with the will so far as this subject is concerned.

As to the condition precedent of accepting the share in full

satisfaction and release of all claims against the decedent's estate and the estate of Mary Moneypenny, we must assume that Dr. McComb would have complied with this requirement; because, knowing the condition prescribed in the will, he claimed his share under it. If he had not done this it could not have been assumed against him, because he died within the two years and also before the share had become payable. Moreover his administrator offered a literal compliance with this condition of the will. Nothing is left of this subject except the argument that because there is such a condition in the will the gift to Dr. McComb is not an absolute and vested legacy; but, the effect of the condition is simply to defeat the estate if it is not complied with, it does not change the legal character of the gift.

So also as to the contention that in case of the death of any of the distributees during the time of the renewal lease, if it be an heir to Dr. McComb, his share shall be divided among the surviving heirs. We cannot possibly see how this provision alters the character of the gift. It is only "heirs" and heirs to Dr. McComb, who take in any event; and, because it is always *his* heirs who are to take, the quality of the gift is the same whether they be one or many. The taking must be through him and the ultimate takers must be his "heirs," and for that reason his interest is absolute. In Physick's App., 50 Pa. 128 we said: "The strong presumption arising from the use of technical words of limitation is not easily overcome. It may be rebutted, but it can be by nothing short of affirmative evidence of a contrary intent, so clear as to leave no reasonable doubt." To the same effect is Criswell's App., 41 Pa. 288. Cockins' App., 3 East R. 715 (1 Cent. R. 890), is still more in point. The words of the will were: "I also bequeath the balance of my estate real and personal *to* my three nieces (naming them) share and share alike during their lives, and at their deaths to go to their heirs in equal amounts, to all heirs living at the time of their deaths. I also decree that no part of my real estate shall be sold during the lives of my nieces, but at their deaths can be sold in order to make distribution to heirs." *Held* that under this language in a will the nieces took a fee simple in the real estate and one-third each of the personal estate absolutely. Here there is a restriction to such of

the "heirs" as should be living at the time of the deaths of the nieces, and hence the devise over is not to "heirs" generally, yet we held the estate of the first taker was a fee.

Item 10 of the will is also urged as containing a defeating clause to the general operation of the word "heirs" as a limitation, in the event of a failure to vest because of any legatee contesting the will or refusing to accept. But the alternative in such case is simply to give the share of the recusant to the other members of the same class, to wit, "heirs," and hence the course of descent is not changed.

Upon the whole case we see no reason to depart from the construction always given in ordinary cases of gifts to one and his heirs, and hence we feel obliged to reverse the decree of the court below and adopt the distribution made by the auditor.

> Decree reversed at the cost of the appellees and it is ordered that the fund in the hands of the accountant be distributed to C. A. Little, administrator c. t. a. of Dr. J. R. McComb, in accordance with the supplemental report of the auditor.