## ESTATE OF CHARLES T. ASHTON, DECEASED.

APPEAL BY W. A. FORD ET AL. FROM THE ORPHANS' COURT OF
PHILADELPHIA COUNTY.

Argued April 1, 1890—Decided April 28, 1890.

(*a*) A testator bequeathed personalty in trust to pay the income thereof
to his son for life, and, on the son's decease, in trust for the son's chil-
dren or the issue of his deceased children, and, in default thereof,
"then in trust to and for the use of the right heirs of him the said"
son, "in equal shares." The son left to survive him a widow and two
nephews, grandchildren of the testator:

1. Though the word "heirs," in its technical sense, is inapplicable to a
disposition of personal property, yet, when used in a gift of personalty,
it is very frequently held to denote those who are entitled to take under
the statute of distributions, unless there is something in the context to
indicate a contrary intention: Eby's App., 84 Pa. 241.

2. In the present case, the fund being personalty, the two nephews take,
not by representation, but directly, under their grandfather's will, as
the next of kin of their uncle; and, the testator contemplating equality
among those entitled to participate, the fund was to be distributed to
the widow and nephews in equal shares, one third thereof to each.

Before STERRETT, GREEN, CLARK, WILLIAMS and MITCH-
ELL, JJ.

No. 147 January Term 1890, Sup. Ct.; court below, No. 169
July Term 1889, O. C.

On October 14, 1889, the trustee's account in the estate of
Charles T. Ashton, deceased, was called for audit, when it was
made to appear as follows:

Jonathan Ashton, father of Charles T. Ashton, died August
5, 1859, leaving a will dated July 4, 1859, duly admitted to
probate, in which after certain particular bequests he provided
as follows:

"I order and direct my executor, hereinafter named, to con-
vert my personal estate into money, and sell and dispose of my
real estate, either at public or private sale, within 2 years next
after my decease, for the highest and best price that can be
gotten for the same, and to grant and convey the same to the
purchaser or purchasers thereof, his, her, or their heirs and as-
signs, without any liability on the part of such purchaser or

purchasers to see to the application of the purchase money therefor; and the moneys arising from such sale or sales thereof, together with all other my monies from whatever source, I give and bequeath unto my executor hereinafter named, his executors and administrators, In Trust for the uses, intents and purposes following; that is to say, In Trust as to one equal third part thereof to invest the same upon good and sufficient land security, and the interest and income thereof to be paid to my wife Mary Ashton during all the term of her natural life; and from and immediately after the decease of my said wife Mary Ashton, the said one third part of my estate shall go to my said three children, Margaret Ellen, Charles T. and Francis Ashton, subject to the same trusts and limitations as are hereinafter particularly set forth and declared with respect to their shares of my estate.

"One equal third part of the residue and remainder of my said estate I give and bequeath unto my said executor hereinafter named, his executors, administrators and assigns, In Trust to invest the same upon good and sufficient land security, and the interest and income thereof to pay to my said daughter 'Margaret Ellen Ashton during all the term of her natural life," etc., [ut infra.]

"One other equal third part of the said residue and remainder of my said estate I give and bequeath unto my said executor hereinafter named, his executors and administrators, In Trust to invest the same upon good and sufficient land security, and the interest and income thereof to pay unto my said son Charles Theodore Ashton during all the term of his natural life, and from and immediately after his decease, then In Trust to and for the only proper use and behoof of all and every the child or children he may leave, or the lawful issue of any of them who may then be deceased leaving such issue, and in default of such issue, or of any grandchild or grandchildren, the issue of any deceased child of him the said Charles T. Ashton, then In Trust to and for the use of the right heirs of him the said Charles T. Ashton in equal shares.

"And the other and remaining equal third part of the said residue and remainder of my said estate I give and bequeath unto my said executor hereinafter named, his executors and administrators, In Trust to invest the same upon good and

sufficient land security, and the interest and income thereof to pay unto my said son Francis Ashton during all the term of his natural life," etc. [ut supra.]

The testator left surviving him a widow, Mary Ashton, and three unmarried children, Margaret Ellen, Charles T., and Francis A. Margaret Ellen married, survived her husband, and died in June, 1873, leaving two children, William A. Ford and John A. Ford. Francis died in 1886, intestate, unmarried and without issue. Mary Ashton, the widow, died in 1887. Charles T. Ashton married in 1888, and died on June 14, 1889, leaving a widow, Bridget Ashton, but no issue.

The fund for distribution was the proceeds of real estate sold under the provisions of the will, and the one half thereof was awarded by the auditing judge to Bridget Ashton, widow of the decedent, and the other half in equal shares to William A. and John A. Ford, the decedent's nephews.

Exceptions to the adjudication being filed by William A. and John A. Ford, and argued before the court in banc, on November 23, 1889, the following opinion was filed, PEN-ROSE, J.:

The distribution directed by the adjudication is entirely in accordance with the authorities. Where the subject of the gift is personalty, the word " heirs," in a limitation to the heirs of a first taker, either substitutionally or by way of succession, is understood as meaning the persons entitled under the statute of distributions in case of intestacy, including therefore, a widow: Jacobs v. Jacobs, 16 B. 557 ; Porter's Trusts, 4 K. & J. 197; Mounsey v. Blaymire, 4 Russ. 384. It is true that in England such a gift does not include a husband, since he takes the estate of the wife by virtue of his paramount right as husband, and not under the statute: Doody v. Higgins, 2 K. & J. 729; In re Craven, 23 B. 333; but the law is otherwise in Pennsylvania: Patterson v. Hawthorn, 12 S. & R. 112; Gibbons v. Fairlamb, 26 Pa. 217. And, though husband or wife cannot take real estate under the designation of heir, their interests in that case being for life only: Ivans's App., 106 Pa. 176; Dodge's App., 106 Pa. 216; the reason does not apply where, as in this case, the will works a conversion: Eby's App., 84 Pa. 241.

Opinion of the Court.

Exceptions dismissed, and adjudication confirmed absolutely.

—The exceptants thereupon took this appeal, specifying that the court erred in not awarding the whole of the fund to the exceptants.

*Mr. John A. Scanlan,* for the appellants.

As to construction, counsel cited: Dodge's App., 106 Pa. 216; Mounsey v. Blaymire, 4 Eng. Ch. 384; Reed's App., 118 Pa. 215; Mull v. Mull, 81 Pa. 393; Little's App., 117 Pa. 14; 2 Wms. on Ex., 2d Am. ed., 1195; Guthrie's App., 37 Pa. 9; Chew's App., 37 Pa. 23; Porter's App., 45 Pa. 201; Cushman v. Horton, 59 N. Y. 149; Ivans's App., 106 Pa. 176; Zimmerman v. Briner, 50 Pa. 535; 2 Wms. on 'Ex., 2d ed., 1120; McNeilledge v. Galbraith, 8 S. & R. 42; Ortt's App., 35 Pa. 267; Walker v. Dunshee, 38 Pa. 430; Gibbons v. Fairlamb, 26 Pa. 217. As to intention: Yarnall's App., 70 Pa. 335; Doebler's App., 64 Pa. 9.

*Mr. J. Jos. Murphy* (with him *Mr. James D. Lee*), for the appellee.

Counsel cited: Eby's App., 84 Pa. 241.

OPINION, MR. JUSTICE STERRETT:

After making provision for the payment of debts, etc., the testator, in and by his last will and testament, directed his executor therein named to convert all his estate, real and personal, into money, and gave the proceeds thereof, "together with all other my monies from whatever source," to his said executor, in trust, to invest one third thereof in real-estate security, and pay the interest and income thereof to his widow during her natural life; and directed that, immediately after her decease, the said one third should go to his three children, Margaret Ellen, Charles T., and Francis Ashton, subject to the same trusts and limitations as are thereinafter particularly set forth and declared with respect to their respective shares of his estate. He then gave one third of the residue to his said executor, in trust to invest the same as aforesaid, pay the interest and income thereof to his daughter, Margaret Ellen Ashton, during life, etc. Another third of said residue he gave to his said executor, in trust "to invest the same upon

good and sufficient land security, and the interest and income thereof to pay unto my said son Charles Theodore Ashton during all the term of his natural life, and from and immediately after his decease, then in trust to and for the only proper use and behoof of all and every the child or children he may leave, or the lawful issue of any of them who may then be deceased leaving such issue, and in default of such issue, or of any grandchild or grandchildren, the issue of any deceased child of him the said Charles T. Ashton, then in trust to and for the use of the right heirs of him, the said Charles T. Ashton, in equal shares." In like manner, he gave the remaining third of said residue to his said executor in trust to invest and pay the income to his son Francis Ashton for life, etc.

Testator's daughter married, survived her husband, and died in June, 1873, leaving to survive her two children, William A. Ford and John A. Ford, the appellants. His son Francis died in November, 1886, intestate, unmarried, and without issue. Testator's widow, Mary Ashton, died in September, 1887; and his remaining son, Charles T. Ashton, who never had any issue, died June 14, 1889, leaving to survive him his widow, Bridget Ashton, the appellee.

The fund for distribution is undoubtedly personal property, the proceeds of real estate which the testator directed his executor to sell. In itself, this was an out and out conversion, but in addition to that the real estate was actually sold and converted into money. The claimants on the fund were the two nephews of Charles T. Ashton, William A. and John A. Ford, and his widow, Bridget Ashton. The former, as sole "heirs" of their uncle, claimed the whole, while his widow claimed one half of the fund. The Orphans' Court decided in favor of the widow, and hence this appeal. The question is, who, under the words, "the right heirs of Charles T. Ashton in equal shares," are entitled to participate in the distribution, and in what proportion? Did the testator intend that, in the contingency that has happened, his two grandsons should take the entire fund to the exclusion of his son's widow, or did he intend that the fund should be distributed among those who, according to the intestate law, would be his son's distributees, in case the latter died possessed of the fund and intestate, and, if so, did he intend that they should take per capita or otherwise?

Opinion of the Court.

In its technical sense, the word "heirs," employed by the testator in this case, is inapplicable to a disposition of personal property, but in its popular meaning the word has a much wider signification.   When used in a gift of personalty, it is very frequently employed to denote those who are entitled to take under the statute of distributions, unless there is something in the context to indicate a contrary intention: Eby's App., 84 Pa. 241; Morton v. Barrett, 22 Me. 257, 264; Mace v. Cushman, 45 Me. 250, 261; Houghton v. Kendall, 7 Allen 72, 77; Sweet v. Dutton, 109 Mass. 589; Tillman v. Davis, 95 N. Y. 17; Newton's Trusts, L. R. 4 Eq. 171; In re Philps' Will, L. R. 7 Eq. 151; Finlason v. Tatlock, L. R. 9 Eq. 258; and other cases cited by the court below.   We are satisfied that it was the intention of the testator in this case to use the word "heirs" in that sense, and hence the Orphans' Court rightly construed the clause in question to mean those entitled under the statute of distributions, viz., the testator's two grandchildren and his son's widow; but we think there was error in distributing one half to the widow, and one fourth each to the two grandchildren.   The gift is to the "heirs of him, the said Charles T. Ashton, in equal shares."   Having ascertained that the parties entitled to participate in the distribution are the two nephews of Charles T. Ashton and his widow, there appears to be no good reason why they should not take "in equal shares," as the will provides.   The two nephews of Charles T. Ashton take, not by representation, but directly under their grandfather's will, as next of kin of their deceased uncle.   The testator appears to have contemplated equality among those entitled to participate.   That intent, being lawful and clearly expressed, should be carried out.   The fund, less the costs of this appeal, should be equally divided among the three parties named in the decree.

> Decree reversed, and record remitted for correction in accordance with this opinion, costs of this appeal, etc., to be paid out of the fund.