## Silverman Trust

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

*William C. Ferguson, Jr.,* for exceptant.
*Israel Packel,* contra.

BOLGER, J., March 1, 1957.—The exceptions, which are the subject of this review, are to the readjudication of the learned auditing judge. Following the argument on exceptions to the first adjudication, it appeared that certain questions had not been raised before the auditing judge with the result that the case was returned to him at his request for further consideration.

On December 2, 1926, at Philadelphia, Abraham Silverman, now deceased, created two identical irrevocable deeds of trust in both of which he named his wife, Helen, trustee of the proceeds of two insurance policies upon his life. He died at Philadelphia January 16, 1927. He directed the income therefrom should be paid in equal shares to their two children, Malcolm and Audrey, for their respective lives and that one half of the principal be paid to Malcolm at the age of 30 years. As the terms of the two trusts were identical, they were from the start consolidated and treated as one. Malcolm attained the age of 30 years in 1952 and received one half of the principal. The trust continued for the benefit of Audrey, who died intestate in New York City, October 12, 1955, survived only by her mother, her husband and her brother, Malcolm. The trust has terminated and the principal is now payable "to the heirs of the said Audrey Silverman surviving her".

In 1931 the settlor's wife and children changed their domicile to New York. From the inception of the trust, the trustee has employed The Pennsylvania Company for Insurances on Lives and Granting Annuities, now The First Pennsylvania Banking and Trust Company, as her agent and custodian of the funds which consist presently of stocks, bonds and mortgages on Pennsylvania real estate.

Audrey's mother, now Helen S. Rosenfield, claims half of the funds. Audrey's surviving husband, Rich-

ard Stanfield, claims not only half of the funds, but a priority of the $10,000 allowance under section 2 of the Pennsylvania Intestate Act of April 24, 1947, P. L. 80, 20 PS §1.2. The learned auditing judge ruled that the membership of the class of "heirs" is to be determined by the law of Pennsylvania. He, however, awarded one half of the estate each to the mother and to the surviving husband, dismissing the latter's claim for $10,000 allowance on the ground that the Intestate Act (without designating which one) was only applicable for the purpose of determining the identity of the heirs. At the argument on exceptions to the first adjudication, the auditing judge orally extended his application of the act to the determination of the fractional shares, but not the quantum of them. We are now passing upon the surviving husband's exceptions to these rulings and the resultant award.

There is no dispute as to the jurisdiction of this court to audit this account and to make the proper awards: Schoble Trust, 346 Pa. 318. The assets are here and the proceeding is in rem. The trusts are seated here, the account is before us and all parties in interest appeared and are represented.

At the audit, the mother-claimant maintained that the law of New York where the life tenant died was determinative of her "heirs". The auditing judge rejected this contention and held that the law of Pennsylvania applies. Although no exceptions were filed to this ruling and the point was not argued at the bar on exceptions, we observe that the attorney for the mother-claimant attempts to reserve this point in his brief. Not only do we conclude that we have the right to treat this point as having been abandoned by the mother-exceptant's attorney failing to file exceptions to this ruling, but we are also satisfied that the learned auditing judge was correct. In Car-

ter's Estate, 20 D. & C. 91, this court held that where the testator, a resident of Pennsylvania, leaves personalty in trust for the benefit of his daughter, then a resident of Pennsylvania, for life with remainder to her heirs and the life tenant, after testator's death, removes to another State, of which she is a resident at the time of her death, her heirs are to be determined by the law of Pennsylvania, pursuant to the testator's presumed intent. Judge Gest, in writing the opinion, stated at page 92:

"Clearly we think he meant all those persons on whom by the law of his own State the inheritance would be cast upon his daughter's death. He may indeed be presumed to know the law of his home State, and even if that presumption be regarded as strained, he certainly may safely be presumed not to know the laws of 47 other States. If, when he made his will, his daughter had been domiciled in another State or country, there might be some room for argument . . . or if there were some special provision in the will to show that the testator had the law of another jurisdiction in his mind that law might govern . . .".

There is nothing in the instant deeds which would indicate that the settlor had the law of another jurisdiction in his mind when he provided this remainder over to his daughter's "heirs" surviving her. See also Masonic Mutual Assn., v. Jones, 154 Pa. 107.

In the determination of who are to be regarded as the heirs of Audrey, the life tenant, we must ascertain the settlor's intention from a perusal of all of the language of both deeds: Cannistra Estate, 384 Pa. 605. Since a living person does not have heirs and the gift over is in remainder to Audrey's "heirs surviving her", these heirs are to be determined as of the date of Audrey's death: Barnard Estate, 351

Pa. 313; Love Estate, 362 Pa. 105. See also Hunter's Pennsylvania Orphans' Court Commonplace Book, vol. II; "Vested and Contingent Interests", sec. 12(b), page 1356, and cases therein cited. In Love Estate, supra, Judge Hunter stated (page 107):

"The direction of this will is that the heirs be 'living at that time', the death of the life tenant. This we are persuaded indicates a gift to a class ascertained at the death of the life tenant, composed of those who answer the description at that time. A contingent gift to a 'then living' class of 'heirs', 'issue', 'descendants', or any other class subject to fluctuation, requires the postponement of both vesting and membership."

In the instant case, solely for emphasis, the gift over here is "to the heirs of the said Audrey Silverman surviving her".

It is agreed that the deeds were expertly drawn. It is clear that their primary purpose was to benefit the settlor's children, their mother being only the trustee. Undoubtedly, the latter was otherwise provided for. At least she is not to be regarded as one of the primary objects of the settlor's bounty in these instruments. There is nothing in the deeds to indicate that the settlor did not anticipate that his daughter would marry; that if she did, her husband would share in these trusts to the full extent prescribed by the Intestate Law existing at the time of her death. Had he intended otherwise, he would have provided either that the remainders should go over to his own heirs or beneficiaries or he would have given the life tenant a power of appointment over the remainders. Further, had he intended to limit the share of any possible husband of Audrey's or of any other heir of hers upon her death, he could have done so. See Eby's Appeal, 84 Pa. 241, 246. There

is not even a direction in these deeds to distribute equally among "heirs" although the readjudication does exactly that.

Starting with Patterson v. Hawthorn, 12 S. & R. 112 (1824), the use of the word "heirs" has been held to be the heirs as ascertained by the statutes of distribution unless a contrary intention is indicated by the conveying instrument: Eby's Appeal, supra; McKee's Appeal, 104 Pa. 571 (1883); Comly Estate, 136 Pa. 153; Ashton's Estate, 134 Pa. 390; Wunder's Estate, 270 Pa. 281; Simpson's Estate, 304 Pa. 396; Golden's Estate, 320 Pa. 4; Barnard Estate, 351 Pa. 313; Bowen's Estate, 139 Pa. Superior Ct. 523 (1940). The sole question here is the surviving husband's claim to the allowance of $10,000.

The Intestate Act of April 24, 1947, P. L. 80, sec. 1, 20 PS §1, provides:

"The real and personal estate of a decedent, whether male or female, subject to payment of debts and charges, and not disposed of by will or otherwise, shall descend as hereinafter provided."

Section 2. "The surviving spouse shall be entitled to the following share or shares: (3) No issue. The first ten thousand dollars in value and one-half of the balance of the estate, if the decedent is survived by no issue."

In his original adjudication it appears that the learned auditing judge inclined to the view that the foregoing act must be read in conjunction with section 14(1) of the Estates Act of April 24, 1947, P. L. 100, 20 PS §301.14. He concluded that when these sections are read together, the $10,000 allowance provided under the Intestate Act, supra, is repealed by the Estates Act, supra. Section 14(1) of that act reads as follows:

"Section 14. Rules of Interpretation.—In the absence of a contrary intent appearing therein, convey-

ances shall be construed, as to real and personal estate, in accordance with the following rules:

"(1) MEANING OF 'HEIRS' AND 'NEXT OF KIN,' ETC; TIME OF ASCERTAINING CLASS. A conveyance of real or personal property, whether directly or in trust, to the conveyor's or another designated person's 'heirs' or 'next of kin' or 'relatives' or 'family' or to 'the persons thereunto entitled under the intestate laws,' or to persons described by words of similar import, shall mean those persons, including the spouse, who would take under the intestate laws if such conveyor or other designated person were to die intestate at the time when such class is to be ascertained, a resident of the Commonwealth, and owning the property so conveyed: Provided, That the share of a spouse other than the spouse of the conveyor, shall not include the ten thousand dollar allowance under the intestate laws. The time when such class is to be ascertained shall be when the conveyance to the class is to take effect in enjoyment."

In the present case there is no need to apply a statutory rule of interpretation, since this settlor clearly defined the remaindermen as ". . . the heirs of the said Audrey Silverman surviving her".

Also, when we pursue the study to other sections of this act, we come to section 21 which reads:

"This act shall take effect on the first day of January, one thousand nine hundred forty-eight, and, except as set forth in section 3 hereof [dealing exclusively with releases of powers], shall apply only to conveyances effective on or after that day. As to conveyances effective before that day, the existing laws shall remain in full force and effect."

In section 1 of the act we find under "Definitions" the following:

" 'Conveyances' means an act by which it is intended to create an interest in real or personal prop-

erty whether the act is intended to have inter vivos or testamentary operation."

Thus the very terms of sections 21 and 1 limit the application of section 14(1) of this act to conveyances, whether by deeds or wills, effective after July 1, 1948, the effective date of the act. Therefore, this act in no way affects the distribution of these funds under the Intestate Act enacted the same day.

And finally, it should be noted that this court has considered the application of the Estates Act to a conveyance made prior to the effective date of the act and has determined that the act cannot apply: McKean Estate, 366 Pa. 192, affirming 71 D. & C. 429.

Thomas McKean executed a revocable deed of trust dated March 14, 1947. He died July 30, 1949. Under section 11 of the Estates Act, the widow claimed that the deed of trust constituted a testamentary disposition and was void with reference to her election to take against the will. The court refused to apply section 11 of the Estates Act retrospectively. Judge Hunter stated in the opinion of this court, at page 435:

"Certainly, the Estates Act did not contemplate that a conveyance has more than one effective date."

There the deed of trust like the present one was not testamentary and the sole conveyance was made on the date when the settlor transferred the assets to the trustee.

In Wetherill's Estate, 4 D. & C. 667 (1924), this court held:

"The word 'heirs' is a technical word when used in connection with real estate, but when used in connection with personal estate, it means those who would take under the statute of distributions, unless there is something in the context to indicate a contrary intention: Eby's Appeal, 84 Pa. 241; Ashton's Estate, 134 Pa. 390; West's Estate, 214 Pa. 35."

We then awarded to the surviving spouse of a deceased life tenant $5,000 plus one half of the balance of the remainder of the estate. The spouse and collaterals were "the natural heirs". This follows the principle enunciated in Hoch's Estate, 154 Pa. 417, as follows:

"The Intestate Laws must control questions of distribution arising upon the settlement of estates of testators as well as intestates, unless the testator has clearly provided a different mode in his will."

In his supplemental adjudication, the learned auditing judge questions the authority of these cases as well as of Simpson's Estate, supra, and Bowen's Estate, supra, in all of which the principle has been followed. He states in effect that the quantum of the heir is not the same as it would be were this the property of the deceased life tenant and not the estate of the settlor. If it is correct to so limit application of the statute of distributions in determining the part or share which the heir shall receive, then the result in all cases where gifts in remainder have been made by will or deed to the heirs of persons other than testators or settlors would be a per capita distribution regardless of the proximity of relationship to the ancestor whose heirs are thus determined.

There can be no substantive or substanial difference between the allowance of $10,000 to a spouse where no children survive and the stirpital distribution among children and issue of a deceased child of a common ancestor. The quantum, whether fractional or fractional plus an allowance, has always been applied among the heirs not only of testators, but of third persons.

The fact that the question with reference to the allowance was not litigated in Bowen's Estate, supra, and Simpson's Estate, supra, is not the point at issue in this case. It is true that in the two cited cases

the courts decided merely that the surviving spouses of deceased legatees were entitled to share, but the records clearly indicate that those shares were to include the statutory allowance. It is as clear as that night follows day. The principle of law that statutes of distribution are followed not only to determine the identity of heirs, but also to determine the share of each has always been applied and followed. See cases cited in Hunter's Pennsylvania Orphans' Court Commonplace Book, vol. II, page 1449.

No case has been cited nor has our research disclosed any case where the Intestate Act once adverted to has been limited in its application. The Intestate Act is a unit and if any part of it is to be applied to the distribution of this estate, it must be applied in its entirety. The heirs of the life tenant could not be ascertained until she died. The Intestate Act of 1947 controls and not the Act of 1917.

". . . testator who commits the distribution of his estate to the law, upon the happening of an event necessarily future, must reasonably be presumed to have contemplated the possibility of a change in the law in the meantime": Kohler's Estate, 199 Pa. 455, cited with approval in Farmers' Trust Company v. Wilson, 361 Pa. 43, 49. This has been the uniform practice in applying the Intestate Act in Bowen Estate, supra, Wetherill Estate, supra, and Diehl Estate, 66 D. & C. 530.

The exceptions are sustained and the allowance of $10,000 claimed by the spouse of the deceased life tenant plus half of the balance is awarded to him. The readjudication is modified accordingly, but in all other respects confirmed absolutely.

### Dissenting Opinion

LEFEVER, J., March 1, 1957.—There is no doubt that the term "heirs" refers to "the heirs as ascertained by the statutes of distribution, unless a contrary intention

is indicated by the conveying instrument".[1] There is real question, however, as to what statute of distribution applies. The Act of June 29, 1923, P. L. 914, 21 PS §11, specifies that "heirs" of a *donor* or *testator* are to be determined at the time of distribution. This act does not apply here, however, because the instant case involves the heirs of a *life tenant*.

Prior to 1947 there was no statutory provision as to the time for determining heirs of a life tenant and little case authority. Kohler's Estate, 199 Pa. 455, held that "a testator who commits the distribution of his estate to the law, upon the happening of an event necessarily future, must reasonably be presumed to have contemplated the possibility of a change in the law in the meantime". However, the will in that case expressly incorporated by reference the Intestate Act in effect on life tenant's death in these words: "Remainder to 'such person or persons as would be entitled thereto if my said son John F. Kohler had survived his wife and died intestate, and possessed thereof and in such shares and proportions as such person or persons would in such case be entitled by law.' " This case is not on point. No other cases have been cited or discovered by independent research. Therefore, this question appears still to be undecided in Pensylvania.

Prior to 1947, there was grave doubt as to whether the spouse of a decedent, other than a testator or an intestate, was entitled to the $5,000 allowance provided in the Intestate Act of 1917, as part of the spouse's intestate share.[2] In Wetherill's Estate, 4 D. & C. 667, this court awarded $5,000 plus one half the net estate to the surviving spouse of a deceased life tenant. There appears to be little other precedent on this difficult legal problem.

---

[1] Majority opinion, page 202 and cases there cited.
[2] See footnote 3.

On April 24, 1947, there were enacted three companion statutes: The Wills Act of 1947, the Intestate Act of 1947, and the Estates Act of 1947, which by express provision were to take effect on January 1, 1948, and were not to apply retroactively. In framing these acts, the Joint State Government Commission intended (1) to raise the amount of the spouse's allowance from $5,000 to $10,000; (2) to define "heirs" and specify that "heirs" are determined at the time "when the conveyance to the class is to take effect in enjoyment"; and (3) to resolve the doubt existing in the law as to the right of a spouse other than the spouse of testator or conveyor to the $10,000 allowance by including an express proviso clause in section 14(4) of the Wills Act of 1947:

"Provided, however, That the share of a spouse, other than the spouse of the testator, shall not include the ten thousand dollar allowance under the intestate laws", and a similar proviso clause in section 14(1) of the Estates Act of 1947: "Provided, That the share of a spouse other than the spouse of the conveyor, shall not include the ten thousand dollar allowance under the intestate laws."

This purpose is clearly set forth in the comments of the Joint State Government Commission,[3] and we

---

[3] The comment of the Joint State Government Commission to section 14(4) of the Wills Act of 1947 is as follows:

"Clause (4). This clause is new. It is an extension of the Act of 1923, P. L. 914, 21 PS §11, to include gifts in remainder to heirs of a person other than the testator. In all such cases it is desirable to have the class determined as of the time the remainder falls in, unless the testator directs otherwise. . . .

" 'Provided, however, that the share of a spouse, other than the spouse of the testator, shall not include the ten thousand dollar allowance under the intestate laws' has been suggested by the recommendation of the Pennsylvania Bar Association Committee on the Law of Decedents' Estates, submitted in June 1941, which read:

properly consider those comments in deciding this case: Martin Estate, 365 Pa. 280.

The majority opinion reasons (1) "the use of the word 'heirs' has been held to be the heirs as ascertained by the statutes of distribution unless a contrary intention is indicated by the conveying instrument"; (2) the applicable statute of distribution is the one in effect at life tenant's death; (3) section 2 of the applicable Intestate Act of 1947 gives the surviving

---

" 'The allowance of $5,000 to the spouse if there is no issue is stated to be applicable "only to cases of actual intestacy of husband or wife." (Act of June 17, 1917, P. L. 429, Sec. 2, 20 PS §11). Yet, it has been held, and it seems properly held, that the allowance is applicable where a spouse directs that the remaining spouse shall take so much as she could claim under the intestate laws'. (Morris Est., 147 A. 840, 298 Pa. 25 (1929); Carrell's Est., 107 A. 664, 264 Pa. 140 (1919). But cf.: Erk's Est., 166 A. 656, 311 Pa. 185 (1933), where the will gave such portion 'which is required by Pennsylvania Law, but no more'.) It is doubtful, however, whether this should apply where there is a similar devise or bequest to a person other than the surviving spouse. For example, if a testator leaves property to A for life and then to the heirs, next of kin or persons entitled to take from A under the intestate laws, it is doubtful whether the testator intended the spouse of A to get the $5,000 allowance. The problem is apt to become of much greater importance because of the repeal of the Rule in Shelley's case. (Act of July 15, 1935, P. L. 1013, 20 PS §229.)

"Recommendation No. 3. The provisions for the $5,000 allowance should not apply to a gift by will or deed to a class described as those entitled under the intestate laws or to a person whose share is described as the part he is entitled to under the intestate laws, except where the beneficiary is the spouse of the donor."

The comment of the Joint State Government Commission to Section 14(1) of the Estates Act is as follows:

"Clause (1). This clause is based on section 14(4) of the Wills Act of 1947, 20 PS §180.14, which in turn is based in part upon the Act of 1923, P. L. 914, 21 PS §§11, 12, extended to include gifts in remainder to heirs of a person other than the conveyor. It is also based on recommendations of the Pennsylvania Bar Association Committee on the law of Decedents' Estates submitted in June 1941 and June 1942."

spouse $10,000, plus one half of the estate, and (4) the Estates Act of 1947 which excludes the right of a spouse other than the spouse of the conveyor to the $10,000 allowance does not apply in this case because ". . . this Court has considered the application of the Estates Act to a conveyance made prior to the effective date of the Act and has determined that the Act cannot apply: McKean Estate, 366 Pa. 192, affirming 71 D. & C. 429".

The majority opinion overlooks the fact that, except for Kohler's Estate, supra, which I do not consider in point for the reasons stated, there is no case authority to support the legal proposition that the statute of distribution in effect at the life tenant's death governs; but, more important, it overlooks the fact that section 17 of the Intestate Act of 1947 has an express provision similar to that of the Estate Act of 1947, namely: "This act shall take effect on the first day of January, one thousand nine hundred forty-eight, and shall apply to real and personal estates of all persons dying on or after that day. The existing laws shall remain in full force and effect for the real and personal estates of all persons dying before that day". In fact, Abraham Silverman, the conveyor in the instant case, died January 16, 1927. Therefore, under the express terms of section 17 of the Intestate Act of 1947 that act cannot apply in this case.

It follows that neither the Intestate Act of 1947, nor the Estates Act of 1947, expressly govern this case. Therefore, we are required either (1) to apply the Intestate Act of 1917, and rule that under Wetherill Estate, supra, the spouse receives $5,000, plus one half the net estate, or, because of the paucity of authority, decide that the spouse is not entitled to the $5,000 allowance; or (2) we must apply the statutory law in effect at the date of life tenant's death as

expressing the legislative intent, as we did in Veder-man Estate, 78 D. & C. 207.

Love Estate, 362 Pa. 105, is in point. There testator died in 1926. By his will he gave the residue of his estate upon the death of the survivor of his widow and daughter "unto the heirs and legal representatives of my brother James Love and my sister Emily B. Stone living at that time". Testator's daughter, the surviving life tenant, died in 1948. The Supreme Court adopted the opinion of our distinguished colleague, Judge Hunter, which states, inter alia (page 107):

"There are two statutes which require that 'heirs' be determined at the time of distribution, the Act of June 29, 1923, P. L. 914, 21 PS §11, and the Wills Act of 1947, P. L. 89, sec. 14(4), 20 PS §180.14, neither of which has a direct application to the instant case, the Act of 1923 because it applies only to the 'heirs' of the testator himself, and the Wills Act of 1947, which applies to the 'heirs' of all persons but is not retroactive.

"These acts do, however, throw light on the problem of a gift to 'heirs', because as was said by Mr. Chief Justice Maxey in Laughlin's Est., 336 Pa. 529 (536), they may be: 'referred to as a legislative establishment of a statutory presumption, and it is reasonable to believe that the presumption is "a conclusion firmly based upon the generally known results of wide human experience ." ' "

Applying this reasoning, section 2 of the Intestate Act of 1947, as modified by section 14(1) of the companion Estates Act of 1947 is applicable. Any other interpretation produces the anomaly that the life tenant's spouse receives *retroactively* the benefit of the Intestate Act of 1947, which was adopted many years after the date of the conveyance and after the date of the conveyor's death, without being bound by the limitations of the Estate Act of 1947, which was intended

by the draftsmen as a complement and limit to the Intestate Act of 1947.

For these reasons, I believe the exceptions should be dismissed. Accordingly, I dissent.

### Dissenting Opinion

SAYLOR, J., March 1, 1957.—I dissent. I agree with the conclusion reached by Lefever, J., in his dissenting opinion, but for different reasons.

My views are contained in the following extract taken from my supplemental adjudication filed on January 2, 1957:

"5. *Spouse's Allowance Limited to Distribution of a Decedent's Estate.*

"Neither the Intestate Act of 1947 nor the Act of 1917 declares that whenever a surviving spouse receives any bequest or devise he or she is entitled to an allowance by virtue of the fact that he or she is a surviving spouse. It is only when a decedent's estate is distributed in accordance with the statute rather than under the terms of a will or deed that a surviving spouse is given an allowance, and then it is only the surviving spouse of the decedent whose estate is being distributed. The Act of 1947 expressly declares, 'The real and personal estate of a decedent, whether male or female, subject to payment of debts and charges, and not disposed of by will or otherwise, shall descend as hereinafter provided.' Act of April 24, 1947, P. L. 80, sec. 1, 20 PS §1.1.

"The Act of 1917 similarly declared 'That the real and personal estate of a decedent, whether male or female, remaining after payment of all just debts and legal charges, which shall not have been sold, or disposed of by will, or otherwise limited by marriage settlement, shall be divided and enjoyed as follows; . . . '. Act of June 7, 1917, P. L. 429, sec. 1.

"These statutory provisions do not establish a general rule that the surviving spouse of every legatee shall receive an allowance. They necessarily recognize that the provisions of the Intestate Act, by definition, apply only to property not otherwise disposed of by the decedent.

"In the instant case the 'heirs' of the life tenant take not as distributees under the Intestate Act but as remaindermen under the deed. The distinction between a substitutionary gift to heirs and a distribution of a deceased spouse's estate was recognized in the opinion of the lower court in Simpson's Estate, 304 Pa. 396 (1931), appearing in the record at pages 32a-33a, where it was stated 'the widow does not take through her husband but directly under the will as his substitute'.

"In the controversy now pending before this court the husband as the surviving spouse had the standing only of a substitutionary legatee. The statute which would apply if the estate of the deceased wife were being distributed is not applicable.

"It is contended that although the Act of 1947 by its terms applies only to the distribution of a decedent's estate any use of the term 'heirs' nevertheless incorporates all the provisions of that act by reference. It is said that this is established by the decision in Patterson v. Hawthorn, 12 S. & R. 113 (1824). In the brief filed the following excerpt from the opinion is set forth:

" 'What did the testator mean by the words, *or their heirs?* I understand it, as if he had said, to be paid to them, or such persons as would be entitled to it, as their representatives by the law of the country; that is to say, it was not, in case of the death of one, to go to the survivors, but to be considered as if vested in the deceased child.'

"The excerpt from the opinion fails to include the final determination made by the court, namely:

" 'I am of opinion, that the legacy was vested, and therefore, the plaintiff is entitled to it, *as administrator of his wife.*' (12 S. & R. at p. 114.) (Italics supplied.)

"The effect of this decision was to refuse to give effect to the word 'heirs' as a word of purchase. The court did not award the fund to the heirs but to the personal representative of the estate of the deceased legatee to become part of her general estate. As such it would be subject to the claims of creditors of the estate and only one spouse's allowance from the general estate would be allowed. If this were followed in the pending controversy the fund now before the court would be awarded in toto to the personal representative of the estate of the deceased daughter and no award would be made by this court to either claimant in his respective individual capacity. The case, however, is inapposite as it related to a predeceasing legatee and not to distribution upon the death of a life tenant.

"It has also been stated that the Acts of 1917 and 1947 are not limited to the distribution of decedents' estates and that Stevenson's Estate, 47 D. & C. 215 (1943), so decided. The brief of counsel cites the syllabus of the District and County Reports that this argument was 'specifically overruled'. It is first to be noted that a syllabus prepared by the District and County reporter is not the decision of the court. Secondly, even the syllabus goes no further than to state that 'where a testatrix makes a substitutionary bequest to the "heirs" of a named person the word must be construed in the light of the Intestate Act'. Thirdly, the court divided the share of a deceased life tenant equally between her husband and her daughter. This is not a holding that if there had been no issue sur-

viving the court would necessarily make an award of a spouse's allowance. It may be conceded that a logical extension of the theory of the court would have reached that conclusion but a logical extension of a theory to facts not before a court is of even less authority than an express dictum on facts not before the court.

"Conceding for the purpose of argument that the Pennsylvania Intestate Act governs the distribution of the remainder upon the death of the life tenant, it seems clear that all the provisions of the Intestate Act must apply. A claimant cannot seek the benefits of the act and refuse to accept the burdens.

"If the Intestate Act is the law to which resort is to be made, it must be first noted that the life tenant died domiciled in New York and that the fund in controversy is personalty. What distribution does the Intestate Act direct in such case? The Act of 1917 declares that 'Nothing in this act contained relative to a distribution of personal estate among kindred shall be construed to extend to the personal estate of an intestate, whose domicile at the time of his death was out of this Commonwealth': Act of June 7, 1917, P. L. 429, sec. 25. The Act of 1947 declares 'Nothing contained in this act with respect to a distribution of personal estate shall extend to the estate of a decedent whose domicile at his death is out of the Commonwealth': Act of April 24, 1947, P. L. 80, sec. 14.

"If the court is to conjecture that the settlor intended the Pennsylvania Act to apply with the exception of the above exclusionary clause, it may conjecture with equal justification and facility that he did not intend the spouse's allowance provision to be operative. Decisions should not rest on conjecture or the law becomes the subject of whim and fancy.

"6. *Applicability of Act of 1917 or 1947.*

"Having reached the conclusion that the mere use

of the word 'heirs' by itself does no more than designate the manner of determining the identity of the distributees, it is immaterial whether reference is made to the Intestate Act of 1917 or 1947 for both claimants are heirs of the deceased life tenant under each of these acts. In view of the fact that the pending controversy was referred back to me to consider which act would be applicable in the event that the Intestate Act should define the quantum of the distribution to be made to such claimants, it is proper now to consider that point, although it would otherwise have been rejected, as moot.

"If the dictum in Bowen's Estate, 139 Pa. Superior Ct. 523 (1939), is to be followed the conclusion should be that the Intestate Act in force at the time of the life tenant's death is applicable. In that case the original decedent died February 26, 1879, and the surviving life tenant died September 20, 1936. The court clearly indicated that it contemplated distribution under the Act of 1917 for it stated that the life tenant's 'widow unless otherwise barred (Act of June 7, 1917, P. L. 429, §6; 20 PS §42), is within the class entitled to share in the fund', and at a later point in the opinion the court stated: 'This conclusion is reasonable, since, under the statute of distribution, a surviving spouse in addition to a specific sum, now takes a share of the estate along with the heirs at law': 139 Pa. Superior Ct. at page 529.

"This indication of the applicability of the Act of 1917 is deemed dictum for the reasons already noted in connection with this case. Moreover, this point was not raised by any party as far as the record and the briefs show. In any case, the conclusion declared in Bowen's Estate, and implicit in such cases as Hickson's Estate, 25 York 62 (1911); Wetherill's Estate, 4 D. & C. 667 (1924), and Diehl Estate, 66 D. & C. 530 (1949) is erroneous.

"A distinction must be made between (1) changes of law made between the time of the execution of a will and the death of the testator, and (2) changes made after the death of the testator. In the case of the former, no rights have vested as the instrument is merely ambulatory. Both the death of a decedent and the delivery of a deed of trust are binding definitive acts which give rise to, or create, vested interests. In the case of the change of law made while the testator was living it can also be assumed that the testator, by not changing his will, intended that it should be interpreted in accordance with the law as modified. Because of the distinction above noted, such decisions as Farmers' Trust Co. v. Wilson, 361 Pa. 43 (1940), are not here controlling, for here the question is whether a statute adopted after a deed of trust was delivered can modify rights arising under that deed.

"Once an instrument becomes effective a change of law cannot operate to modify the rights of the parties thereto, even though the parties are merely remaindermen, and even though their interests are contingent. It is now well established that a statute relating to principal and income cannot constitutionally apply to a trust created by deed or by will before the effective date of the statute: Crawford Estate, 362 Pa. 458 (1949); Pew Trust, 362 Pa. 468 (1949); Steele Estate, 377 Pa. 250 (1954); Warden Trust, 382 Pa. 311 (1955); Arrott Estate, 383 Pa. 228 (1955).

"In the Crawford, Pew, Warden and Arrott cases a trustee ad litem had been appointed by the court. The Supreme Court, in describing the vested interests of life tenant and remaindermen which could not be modified by subsequent legislation, did not make any distinction between remaindermen who held vested remainders and those whose rights in remain-

der were contingent and represented by a trustee ad litem.

"If these cases hold that a subsequent statute cannot modify the rules of law governing the distribution of a fund between life tenants, on the one hand, and all kinds of remainder interests on the other, how can a subsequent statute change the membership of the class of remaindermen as by defining 'heirs', or alter the proportions to be received by members of the remainder class, as by changing the distribution among heirs? It is therefore concluded that the legislature could not constitutionally declare an intestate act applicable to the definition of 'heirs' of a life tenant under an instrument becoming effective prior to such act of the legislature. If this be so, the court should not by interpretation achieve a result which the legislature could not achieve without violating the constitution.

"It is therefore held that whether a reference is made to an intestate act for the limited purpose of determining who are the heirs of the deceased life tenant, or for the broader purpose of also determining what amounts such heirs should receive, that reference must be to the intestate act which was the law when the deeds of trust were delivered and became effective, in 1926.

"On its facts Love's Estate, 362 Pa. 105 (1949), is not applicable to the pending controversy. There the decedent's will directed that the 'heirs' be those who were living at the death of the life tenant, and the life tenant predeceased the testator. The statement in the decision of the lower court that 'The rule generally recognized by the courts prior to the death of this testator was that the heirs of a person other than testator must be determined at that person's death . . .' (set forth in 362 Pa. 105, at page 107) is not controlling here, for the court was not there considering the effect

or validity of a change of the law between the date of the decedent's death and the date of the life tenant's death.

"The following portion of the commentary under section 245 of the Restatement of Law of Property has been cited to the court:

" 'When a will describes the takers of a gift as the "heirs" of the testator or of some other living person, or when a will describes the size of the gift as the "intestate share" of some relative of the testator, the selected phraseology connotes a dependence upon the rules of law operative at a date subsequent to the execution of the will and defining the persons entitled and shares taken, on intestate succession. Thus in a limitation so phrased, a testator is construed to have intended, respectively, his donees, or the size of his gift, to be subject to alteration by changes of law which occur after the execution of his will'.

"This excerpt is not convincing authority with respect to the issues before the court, because

"(1) it assumes that a gift to 'heirs' and a gift of an 'intestate share' are to be treated the same without indicating that a question of interpretation is involved in equating one term to the other;

"(2) it makes no reference to a spouse's allowance;

"(3) it speaks of the alteration of the size of the gift and does not indicate that it means more than a proportionate modification based upon the admission of new members to the class of heirs;

"(4) it confines the observations to a will and makes no reference to a deed of trust, and

"(5) it refers to changes of law made after the execution of the will, and thus gives rise to the inference that no expression is intended as to changes made after the death of the testator.

## "7. *Conclusion*

"It is, of course, permissible for a settlor or a testator to provide for a gift to the heirs of a person and specify that they shall receive such amounts or shares as they would be entitled to under the 'intestate acts'. The question now before the court is whether 'heirs' by itself means simply heirs, that is, a term of identification, or whether there is to be automatically read into that word, 'in such shares as they would be entitled to receive under the Intestate Act'. Words should be taken at their face value, and a gift to heirs should be regarded merely as a gift to a class of persons, membership in that class being determined on the basis of relationship to the decedent.                    ,

"If the owner of land conveys it to 'A' for life, with remainder to the heirs of 'A', are the interests of the respective heirs to be determined by the Intestate Act, or will they hold as members of a class? The deeds before the court were carefully drawn. The omission of a direction that the heirs should receive their intestate shares should serve as an indication that that was not intended.

"Much has been made of the argument that, by using the word 'heirs', the settlor indicated that he was not greatly concerned with the identity of the persons to whom the property was to pass upon the life tenant's death, and that accordingly he must have intended distribution to be made according to the intestate act. It may be equally conjectured that the settlor was so little concerned with the ultimate distribution that he was content to allow the property to pass to the heirs as a class. Having contented himself with creating a remainder for the 'heirs', the settlor stopped and did not direct distribution in accordance with the intestate act. A court, interpreting, rather than reforming an instrument, should likewise stop with the words of the settlor.

"In any event, the decision is one which is not controlled by precedent. As noted in the original adjudication, and in this supplemental adjudication, statements or decisions of the appellate courts, where relevant, have been dicta. The lower court cases which have referred to the Intestate Act for the distribution to be made have not rested on authority, for none of the cases cited by them supports the conclusion reached by them. And, finally, caution should be exercised in expanding the meaning of 'heirs' when existing titles to property may be affected thereby."